10 F.3d 46
 62 Fair Empl.Prac.Cas. (BNA) 1638,
62 Empl. Prac. Dec. P 42,587,
63 Empl. Prac. Dec. P 42,703, 62 USLW 2247,
126 Lab.Cas. P 33,020,
1 Wage & Hour Cas. 2d (BNA) 1124
 Janine LAMBERT, Eva Baker, and Tami Foster, Plaintiffs-Appellants,
v.
GENESEE HOSPITAL, Francis Dupre, Individually, and as
Manager of the Duplicating Services Department of
The Genesee Hospital, Tod Timmel,
Individually, and as Materials
Manager, Defendants-Appellees.
 No. 597, Docket 92-7570.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 1, 1992.
Decided Sept. 17, 1993.
Amended Opinion Filed Nov. 24, 1993.
 
 Emmelyn Logan-Baldwin, Rochester, NY, for plaintiffs-appellants.
 Susan B. Robfogel, Nixon, Hargrave, Devans & Doyle (Marion Blankopf, Nixon, Hargrave, Devans & Doyle, Rochester, NY, of counsel), for defendants-appellees.
 Before: LUMBARD, WINTER, and WALKER, Circuit Judges.
 WALKER, Circuit Judge:
 
 
 1
 This is an action brought by three employees of the Duplicating Services Department of the Genesee Hospital (the "Hospital") against the Hospital, their supervisor Tod Timmel, and Francis Dupre, a printer in the Department who was elevated to manager. Plaintiffs allege discrimination based on sex and retaliation for complaining about the alleged discriminatory practices, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq. ("Title VII"); the Fair Labor Standards Act, 29 U.S.C. Sec. 201 et seq. (the "FLSA"), as modified by the Equal Pay Act of 1963, 29 U.S.C. Sec. 206(d) et seq. (the "EPA"); and the New York State Human Rights Law, N.Y. Exec. Law Sec. 291 et seq. (the "Human Rights Law" or "HRL").
 
 
 2
 Plaintiffs appeal on a variety of grounds from a judgment of the United States District Court for the Western District of New York (David G. Larimer, Judge ) of April 28, 1992 and an amended judgment dated May 22, 1992. The plaintiffs challenge rulings made in decisions and orders of the district court dated April 4, 1991, July 18, 1991, August 13, 1991, April 28, 1992, and May 22, 1992, contained in the foregoing judgments. Plaintiffs contend that the district court erred in dismissing a number of their claims on summary judgment; in denying them a jury trial on their Title VII and HRL claims; in a number of its evidentiary rulings; in granting judgment notwithstanding the verdict (j.n.o.v.) on certain claims and in the alternative a new trial; and in ruling that plaintiffs could not receive punitive damages under the Equal Pay Act.
 
 
 3
 We agree with plaintiffs that they were entitled to a jury trial on their Human Rights Law claims. We also agree with plaintiffs that the district court erred in granting j.n.o.v. on plaintiff Eva Baker's claim that she was denied equal pay for equal work, but affirm the district court's grant of a new trial on that issue. Further, we agree with the plaintiffs that the defendants are procedurally barred from raising grounds in their j.n.o.v. motion different from those raised in their directed verdict motion; however, we affirm the judgment for defendants on the EPA retaliation claims because plaintiffs as a matter of law failed to establish a retaliation claim under the EPA. The remainder of plaintiffs' claims are without merit, and we affirm the district court as to them.
 
 BACKGROUND
 
 4
 The Hospital's Duplicating Services Department (the "Department") provides it with microfilm and printing services. The Department was formally divided into a microfilm area and a printing area in March 1983. It normally had a staff of six: two microfilm clerks, two printers who operate offset presses, one printing clerk, and a manager. Plaintiff Eva Baker transferred to the Department from another area of the Hospital in 1980 to become a microfilm clerk. In 1982, plaintiff Tami Foster, who had been a driver with the Hospital's motor pool, transferred to the Department to help out with various clerical functions. Both Baker and Foster left the Hospital in 1985 due to the alleged discriminatory acts of the defendants. Plaintiff Janine Lambert joined the hospital staff as a microfilm clerk in February 1982 and remained employed by the Department throughout the course of this action.
 
 
 5
 In March 1983, Foster operated the model "360" offset printing press and defendant Francis Dupre ran the model "385" press, which paid more than the 360 position. Also at that time, Lambert transferred to print clerk, opening up a microfilm clerk position, which Robert Weisschadel filled. The Department's manager at that time was Terri Shiels, a woman who had been manager of the Department since its creation in 1976, and before that had been manager of the Department's predecessor, known simply as the print shop. From March through May of 1982, Shiels, who had cancer, was out of the office on medical leave. When she went on medical leave again in August or September, 1983, her supervisor, Materials Manager Tod Timmel, transferred another Hospital employee, Kent Johnson, into the Department to assist in her absence.
 
 
 6
 In September 1983, Foster became pregnant and moved from the 360 press to the Department's office without a change in pay. The parties agree that this transfer stemmed from concern about the potentially harmful effects of the solvents used on the press, but disagree as to whether Foster or the Hospital initiated it. Timmel then assigned Johnson to Foster's former position on the 360 press, and announced that he would appoint one of the printing area employees to be a "charge person," who would be an informal supervisor of the printing employees. Baker, who was in the microfilm area and claimed to be acting in a supervisory capacity there, complained to Timmel about not being permitted to apply for the position. Lambert and Dupre applied for the charge-person position, which Timmel gave to Dupre. When Dupre received a corresponding raise, Baker and Lambert complained to Timmel, and also to Ron Good in the Hospital's employee-affairs department, that since Baker was in effect also a charge person in the microfilm area, she was entitled to the same salary as Dupre. Lambert also complained to Good that Timmel chose Dupre for the charge-person position over her because Dupre was male.
 
 
 7
 In May 1984, Foster went on maternity leave. As a result, Dupre moved into the office, maintaining his 385 job title and salary, Johnson moved from the 360 press to the 385 press (receiving a raise six months later), and Weisschadel took over the 360. That same month, Terri Shiels died. The Hospital subsequently advertised the manager position in the Rochester newspapers, and posted the position within the Hospital. These listings stated that the position required, inter alia, five to six years of printing experience.
 
 
 8
 In July 1984, Foster returned from maternity leave and requested reassignment to the 360 press, where she had worked before she became pregnant and moved into the office. Instead, Timmel assigned her to the microfilm clerk position, but paid her the same salary and benefits she had received as a 360 operator.
 
 
 9
 In September 1984, Timmel picked Dupre, who had more than eight years of printing experience, to manage the Department. Plaintiffs Lambert, Baker, and Foster, none of whom applied for the position or had the requisite five to six years of printing experience, complained to Paul Hanson, the Hospital's president, that the selection of Dupre as manager was based on sex, and that other instances of sex discrimination had occurred in the Department. Baker threatened to quit. Robert Weisschadel also complained about the selection of Dupre as manager. On October 26, 1984, plaintiffs filed charges with the Equal Employment Opportunity Commission (the "EEOC"). Then, on April 12, 1985, Baker and Foster resigned and on April 17, 1986, filed additional charges with the EEOC.
 
 
 10
 In July 1986, plaintiffs filed the instant action. The parties filed cross-motions for summary judgment, and the district court granted judgment in favor of the defendants on a number of their EPA and Title VII claims: the Title VII claims of sex discrimination in the various transfers among the printer and clerk positions; Lambert and Foster's Equal Pay Act claims that the 360 and 385 printer positions were substantially equal and deserving of equal pay; Foster's claim that she was a victim of discrimination based on her pregnancy; and Foster's claim of discrimination in the appointment of Dupre to charge person. The district court permitted plaintiffs to go to trial on their constructive discharge claims and their claims of other instances of retaliatory harassment for filing the first EEOC charge; their claims that Dupre's promotion to manager was in retaliation for their complaints to their supervisors of denial of equal pay and other complaints of discrimination, and that the promotion also was sex discrimination; the claims of Lambert and Baker that they were discriminatorily denied the charge-person position; and the claims of Baker and Foster that their positions were equal to Dupre's charge-person position.
 
 
 11
 On May 21, 1991, after a five-week trial, the jury found for all three plaintiffs on their FLSA claims that the Dupre promotion to manager was retaliation for making EPA complaints, and found for Baker on her EPA claim that she was denied equal pay for her charge-person responsibilities in the microfilm area. However, the jury found for the defendants on all three plaintiffs' EPA claims of retaliation through constructive discharge and other incidents of retaliatory harassment, and Foster's claim that she was denied equal pay.
 
 
 12
 In a decision and order issued on July 18, 1991, the district court set forth the binding effect that the jury's verdict would have on the court's Title VII and HRL judgments and made various evidentiary rulings. The court held that the jury's findings of EPA retaliation and denial of equal pay to Baker compelled the court to find violations of Title VII based on the same conduct. However, as to the EPA claims the jury rejected, the court held that it was free to find Title VII violations based on the same conduct. The court also granted summary judgment for the defendants on plaintiffs' Title VII and HRL claims based on the disparate pay of the 360 and 385 operators, as it had earlier on the EPA claims arising from the same facts.
 
 
 13
 The district court took further evidence after the close of the jury trial, and issued its judgment on the Title VII and HRL claims on August 13, 1991. Based on the corresponding jury finding of EPA violations, the district court entered judgment for plaintiffs on their Title VII and HRL claims for retaliatory promotion of Dupre to manager and for defendants' denial of equal pay to Baker due to her sex. The court also found that Baker and Lambert's claims of discrimination in the promotion of Dupre to charge person were time-barred. The court found for the defendants on the remaining EPA and Title VII claims.
 
 
 14
 Defendants moved for j.n.o.v. or, in the alternative, for a new trial on the issues on which the plaintiffs had prevailed: the retaliatory promotion of Dupre to manager and the denial of equal pay to Baker. On April 28, 1992, the district court granted j.n.o.v. on these claims and entered judgment. On May 22, 1992, the district court amended the judgment to order a new trial in the alternative.
 
 
 15
 This appeal followed.
 
 DISCUSSION
 I. Jury-Trial Issues
 A. Human Rights Law Claims
 
 16
 In its April 4, 1991 decision, the district court held that there was no right to a jury trial on the Human Rights Law claims, since the court considered these claims to be equitable in nature. The court also exercised its discretion to take supplemental jurisdiction over the Human Rights Law claims pursuant to United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). We note in passing that 28 U.S.C. Sec. 1367, which codified Gibbs, only applies to claims commenced after December 1, 1990, and thus was inapplicable in this case commenced in 1986.
 
 
 17
 After the district court issued its decision, we ruled that Human Rights Law claims are legal and that the right to a jury therefore attaches. Song v. Ives Labs., Inc., 957 F.2d 1041, 1047-48 (2d Cir.1992). Since the court in Song applied this rule to the action before it, the rule must be applied in all subsequent decisions, see James B. Beam Distilling Co. v. Georgia, --- U.S. ----, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), and plaintiffs are entitled to a jury trial on their HRL claims.
 
 B. Title VII
 
 18
 Plaintiffs argue that they also were entitled to a jury trial on their Title VII claims, pursuant to amendments to Title VII that were part of the Civil Rights Act of 1991, Pub.L. No. 102-166, 105 Stat. 1071 (the "Act"). We have held that the jury-trial provisions of the Act do not apply retroactively. See Wisdom v. Intrepid Sea-Air Space Museum, 993 F.2d 5, 7 (2d Cir.1993); Postema v. National League of Professional Baseball Clubs, 998 F.2d 60, 61-62 (2d Cir.1993). Our decision in Butts v. City of New York Department of Housing Preservation & Development, 990 F.2d 1397 (2d Cir.1993), left open the possibility that a different retroactivity analysis might apply to actions pending on appeal at the time the Act was passed. See id. at 1410-11. In the present action, although the bench trial on the Title VII issues preceded the November 21, 1991 effective date of the Act, the district court did not enter judgment until April 28, 1992, so the action was not pending on appeal when the Act became effective. Wisdom therefore controls, and the district court properly denied the plaintiffs a jury trial on their Title VII claims.
 
 II. Timeliness of the Charge-Person Claims
 
 19
 All three plaintiffs claim that the appointment of Dupre as charge person of the printing area constituted discrimination against them in violation of Title VII. The district court granted summary judgment for defendants on Foster's charge-person claim in its April 4, 1991 decision and order, but denied summary judgment on Baker's and Lambert's claims, since they presented triable issues of fact. Although the discriminatory acts claimed by Baker and Lambert occurred more than 300 days before the plaintiffs filed their EEOC charge in October 1984 and ordinarily would be time-barred under 42 U.S.C. Sec. 2000e-5(e), see Gomes v. Avco Corp., 964 F.2d 1330, 1332-33 (2d Cir.1992), the court allowed the claims to proceed to trial to give plaintiffs an opportunity to prove that the charge-person discrimination was part of a "continuing violation." See id. at 1333. After hearing evidence on the issue, the court ruled in its August 13, 1991 bench trial decision that plaintiffs had failed to prove the existence of a continuing violation.
 
 
 20
 Under the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone. Cook v. Pan Am. World Airways, Inc., 771 F.2d 635, 646 (2d Cir.1985), cert. denied, 474 U.S. 1109, 106 S.Ct. 895, 88 L.Ed.2d 929 (1986).
 
 
 21
 The continuing violation exception applies to cases involving specific discriminatory policies or mechanisms such as discriminatory seniority lists, Cook, 771 F.2d at 646, or discriminatory employment tests, Association Against Discrimination in Employment, Inc. v. Bridgeport, 647 F.2d 256, 274-75 (2d Cir.1981), cert. denied, 455 U.S. 988, 102 S.Ct. 1611, 71 L.Ed.2d 847 (1982). However, multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation. See Stoller v. Marsh, 682 F.2d 971, 975 (D.C.Cir.1982) (no continuing violation where a plaintiff does not allege an "unlawful program of discrimination" but merely alleges "specific, perhaps unrelated instances" of discrimination) (quoting Milton v. Weinberger, 645 F.2d 1070, 1076 (D.C.Cir.1981)), cert. denied, 460 U.S. 1037, 103 S.Ct. 1427, 75 L.Ed.2d 787 (1983); Samuel v. Merrill Lynch Pierce Fenner & Smith, 771 F.Supp. 47, 49 (S.D.N.Y.1991). Since plaintiffs failed to produce evidence of any such policy or mechanism here, the charge-person claims were properly dismissed as time-barred.
 
 III. Judgment Notwithstanding the Verdict
 A. Equal Pay Act Claims
 
 22
 Plaintiffs first argue that the district court erred in granting defendants' j.n.o.v. motion under Fed.R.Civ.P. 50(b) because defendants did not move for a directed verdict on the claims for which the court granted j.n.o.v. At the close of the plaintiffs' case, the defendants made a motion for a directed verdict, listing three specific grounds: (1) that Timmel and Dupre were not employers; (2) that there was no proof of the substantive denial of equal pay to Foster or Baker, nor any proof of retaliatory constructive discharge; and (3) there was no proof of willfulness. The defendants made no motion with respect to all three plaintiffs' claims that the promotion of Dupre to manager constituted retaliation under the EPA.
 
 
 23
 Under Fed.R.Civ.P. 50(a), a party making a motion for a directed verdict (now referred to as a "motion for judgment as a matter of law") must specify the grounds upon which the motion relies. Furthermore, because a j.n.o.v. motion under Fed.R.Civ.P. 50(b) (now referred to as a "renewed motion for judgment as a matter of law after trial") is in reality a renewal of a motion for a directed verdict, it cannot assert new grounds for relief. Meriwether v. Coughlin, 879 F.2d 1037, 1044 (2d Cir.1989); see also 9 Wright & Miller, Federal Practice and Procedure Sec. 2537, at 598 (1971). As a recent panel of this court astutely pointed out: "These two rules read together limit the grounds for judgment n.o.v. to those specifically raised in the prior motion for a directed verdict." Samuels v. Air Transp. Local 504, 992 F.2d 12, 14 (2d Cir.1993).
 
 
 24
 We note that at times courts have been lax in enforcing this specificity requirement at the directed verdict stage to preserve an issue for a j.n.o.v. motion, see, e.g., Mosley v. Cia. Mar. Adra S.A., 362 F.2d 118, 121-22 (2d Cir.), cert. denied, 385 U.S. 933, 87 S.Ct. 292, 17 L.Ed.2d 213 (1966), although more recently courts have more rigorously exacted compliance with the specificity requirement, see, e.g., Smith v. Lightning Bolt Prods., Inc., 861 F.2d 363, 367 (2d Cir.1988); McCarty v. Pheasant Run, Inc., 826 F.2d 1554, 1555-56 (7th Cir.1987).
 
 
 25
 If there were any doubts remaining as to the continued vitality of cases which disregarded the specificity requirement, the recent amendments to Rule 50 laid these doubts to rest. Although the amendments did not change the substantive standard for evaluating either a motion for a directed verdict or a motion for a j.n.o.v., instead merely renaming these respective motions, the Advisory Committee's Notes indicate that the specificity requirement is obligatory and ensures that the other party is made aware of any deficiencies in proof that may have been overlooked. See Fed.R.Civ.P. 50 advisory committee's notes ("The articulation is necessary to achieve the purpose of the requirement that the motion be made before the case is submitted to the jury, so that the responding party may seek to correct any overlooked deficiencies in the proof."). The Notes explicitly state that the "revision thus alters the result in cases in which courts have used various techniques to avoid the requirement that a motion for a directed verdict be made as a predicate to a motion for judgment notwithstanding the verdict." Id.
 
 
 26
 Motivating the Advisory Committee's concern for specificity was the desire to put a party on notice of potential deficiencies in its proof before the case is submitted to the jury. As Professor Moore explains, "[a] careful reading of the Advisory Committee Note indicates that the Committee was particularly interested in protecting the nonmovant's right to be informed, prior to submission of the case to the jury, of the alleged deficiencies in the case." 5A Moore & Lucas, Moore's Federal Practice p 50.08, at 50-95 (2d ed. 1993).
 
 
 27
 Because the defendants failed even to raise the issue of the promotion of Dupre to manager at the directed verdict stage, let alone the grounds upon which they deserved judgment as a matter of law, they are not permitted to raise the issue in a subsequent j.n.o.v. motion. Defense counsel's prefatory remark at the directed verdict stage that "as a matter of law the plaintiffs have failed to prove any of the claims they are entitled to prove in this phase of the trial" is insufficient to satisfy the specificity requirement of Fed.R.Civ.P. 50(a). If such a broad, general statement that "a party has failed to prove any and all of its claims" were held to satisfy Fed.R.Civ.P. 50(a), the specificity requirement of that rule would be rendered a nullity.
 
 
 28
 We note that the plaintiffs' petition for rehearing prompted us to reconsider a prior ruling of this panel that defense counsel's general prefatory remark at the directed verdict stage was sufficient to preserve the issue for a subsequent j.n.o.v. motion. Upon further consideration, we believe that the defendant's motion failed to meet the specificity requirement of Fed.R.Civ.P. 50(a), and this Amended Opinion reflects this view. In all other respects, the petition for rehearing is denied.
 
 
 29
 Nevertheless, we affirm judgment for the defendants on the claim that Dupre's promotion to manager was an unlawful retaliation under the EPA because plaintiffs' allegations on this score, even if assumed to be true, do not state a claim under the EPA due to the different threshold requirements of an EPA retaliation claim as compared with a Title VII retaliation claim.
 
 
 30
 Title VII broadly provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. Sec. 2000e-3(a). The phrase "opposed any practice" encompasses an individual's complaints to supervisors regardless of whether she also files an EEOC charge. Kotcher v. Rosa & Sullivan Appliance Ctr., Inc., 957 F.2d 59, 65 (2d Cir.1992).
 
 
 31
 In contrast, FLSA's anti-retaliation provision makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. Sec. 215(a)(3). The EPA is an amendment to the FLSA and is codified under the same chapter; thus retaliation for filing EPA complaints falls under Sec. 215(a)(3). The plain language of this provision limits the cause of action to retaliation for filing formal complaints, instituting a proceeding, or testifying, but does not encompass complaints made to a supervisor. See EEOC v. Romeo Community Sch., 976 F.2d 985, 990 (6th Cir.1992) (Surheinrich, J., dissenting) (noting that Sec. 215(a)(3) on its face prohibits retaliation based on "three expressly enumerated types of conduct," in contrast to the much broader retaliation protection afforded by Title VII). We note that a number of our sister circuits have held to the contrary. See Romeo Community Sch., 976 F.2d at 989-90 (holding that plaintiff's complaint that employer was "breaking some sort of law" by paying her lower wages was sufficient to constitute filing of Equal Pay Act action for purposes of Sec. 215(a)(3)); EEOC v. White & Son Enters., 881 F.2d 1006, 1011 (11th Cir.1989) (noting that while complaints to supervisors were not acts "explicitly listed in the FLSA's anti-retaliation provision," reading such acts to be within the provision is merited since it would further the remedial purpose of the FLSA); Love v. RE/MAX of Am., Inc., 738 F.2d 383, 387 (10th Cir.1984) (holding that Sec. 215(a)(3) "applies to the unofficial assertion of rights through complaints at work"); see also Crowley v. Pace Suburban Bus Div., 938 F.2d 797, 798 n. 3 (7th Cir.1991) (noting that section 215(a)(3) has been "construed broadly"). Because we hold that the statute's language is plain and unambiguous, we need not defer to the EEOC's interpretation in its compliance manual that the EPA retaliation provisions should encompass informal workplace complaints. See Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984) ("If the intent of Congress is clear, that is the end of the matter.").
 
 
 32
 Plaintiffs allege not that they filed any complaint or charge prior to Dupre's promotion, but only that they complained to Timmel that Baker should receive the same salary that Dupre received as charge person of the printing area, since her responsibilities in the microfilm area were substantially equivalent. We also note that they merely complained that it was "not fair" that Baker did not receive charge-person pay for her duties, without stating that sex was the reason for the disparity. Under these circumstances, no cause of action for Equal Pay Act retaliation will lie.
 
 
 33
 Our decision in Brock v. Casey Truck Sales, Inc., 839 F.2d 872 (2d Cir.1988), is easily distinguishable. In that case, the company fired workers who had the temerity to claim back pay that the company had agreed with the Labor Department to pay following an investigation that had arisen out of a worker's complaint to the Labor Department that workers were being denied compensation at overtime rates. We held that Sec. 215(a)(3)'s anti-retaliation provision applied, since "[p]rotection against discrimination for instituting FLSA proceedings would be worthless if an employee could be fired for declining to give up the benefits he is due under the Act." Id. at 879. In contrast, the acts for which the Hospital allegedly retaliated were neither the filing of a claim nor acts, such as accepting a back pay award, that grew out of the filing of claims. They are simply oral complaints to a supervisor that an employee was being paid less than the complainants thought she should have been.
 
 
 34
 We recognize that this issue was not presented to this court, and that the lower court assumed that informal complaints would be sufficient to state a claim under the EPA. However, we have discretion to consider and decide sua sponte a dispositive issue of law that, taking a plaintiff's factual allegations to be true, would prevent a plaintiff from recovering. See, e.g., Gregory v. United States/United States Bankruptcy Court, 942 F.2d 1498, 1500 (10th Cir.1991) ("[S]ua sponte invocation of Rule 12(b)(6) on appeal may be appropriate in those rare instances in which a plaintiff cannot recover on the complaint because of a dispositive issue of law."), cert. denied, --- U.S. ----, 112 S.Ct. 2276, 119 L.Ed.2d 202 (1992); Molecular Technology Corp. v. Valentine, 925 F.2d 910, 920 (6th Cir.1991) ("This court may, in its discretion, consider clear errors in the proceedings below in an unusual case sua sponte."); see also Romain v. Shear, 799 F.2d 1416, 1419 (9th Cir.1986) (holding that an argument can be considered for the first time on appeal when, inter alia, "the issue is purely one of law and the necessary facts are fully developed"), cert. denied, 481 U.S. 1050, 107 S.Ct. 2183, 95 L.Ed.2d 840 (1987).
 
 
 35
 Since the evidence was insufficient to establish a prima facie case of retaliation, plaintiffs' related argument that the district court erred in holding that punitive damages were unavailable to them under the EPA is moot.
 
 
 36
 As for the remaining claim on which the plaintiffs received a favorable jury verdict, Baker's claim that her position in the microfilm area from February 1982 to September 1984 was equal to Dupre's charge-person position, the defendants properly preserved the issue in their directed verdict motion. Thus, we must consider the propriety of the district court's granting of the j.n.o.v.
 
 
 37
 It is well established in this circuit that a j.n.o.v. motion may only be granted where there is "such a complete absence of evidence supporting the verdict that the jury's finding could only have been the result o[f] sheer surmise and conjecture," or if the evidence is "so overwhelming that reasonable and fair minded persons could only have reached the opposite result." Sorlucco v. New York City Police Dep't, 971 F.2d 864, 871 (2d Cir.1992) (quoting Stubbs v. Dudley, 849 F.2d 83, 85 (2d Cir.1988), cert. denied, 489 U.S. 1034, 109 S.Ct. 1095, 103 L.Ed.2d 230 (1989)).
 
 
 38
 We believe that the district court erred in granting defendants' motion for j.n.o.v. on Baker's EPA claim that she was denied equal pay for her work in the microfilm area, since the jury had before it sufficient evidence to support a verdict in Baker's favor.
 
 
 39
 To establish a claim under the Equal Pay Act, a plaintiff need not prove that her job is identical to a higher-paid position, but only must demonstrate that the two positions are "substantially equal." Hodgson v. Corning Glass Works, 474 F.2d 226, 234 (2d Cir.1973), aff'd, 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974); Koster v. Chase Manhattan Bank, N.A., 609 F.Supp. 1191, 1193 (S.D.N.Y.1985). However, where jobs are merely comparable, an action under the Equal Pay Act will not lie. Hodgson, 474 F.2d at 230-31; Koster, 609 F.Supp. at 1193.
 
 
 40
 There was sufficient evidence before the jury for it to conclude that the formalized charge-person position in the printing area occupied by Dupre and Baker's position in the microfilm area were both quasi-supervisory positions intended to fill in gaps in management responsibilities left by Shiels's frequent medical leaves. The jury's decision that these positions were substantially equivalent, and not merely of comparable value, had a reasonable basis in the evidence. We therefore reverse the district court's grant of j.n.o.v.
 
 
 41
 While not explicitly mentioning Baker's related Title VII claim for denial of equal pay on account of sex, the court presumably entered j.n.o.v. for defendants on this claim as well because the court relied upon the jury verdict's binding effect when it entered judgment on behalf of Baker. In light of the court's erroneous entry of j.n.o.v. on Baker's substantive EPA claim, this judgment must also be reversed.
 
 
 42
 However, the district court, pursuant to Rule 50(c), granted a new trial in the alternative on these claims. A grant of a new trial for insufficiency of the evidence is not reviewable in this circuit. Dunlap-McCuller v. Riese Org., 980 F.2d 153, 157-58 (2d Cir.1992), cert. denied, --- U.S. ----, 114 S.Ct. 290, 126 L.Ed.2d 239 (1993). We therefore remand these claims for a new trial.
 
 
 43
 B. Related Title VII and Human Rights Law Claims
 
 
 44
 As stated above, the district court ruled from the bench that the jury verdict on the plaintiffs' EPA claims had binding effect on the related Title VII and HRL claims stemming from the same facts. When entering j.n.o.v. in favor of the defendants on the plaintiffs' EPA retaliation claims, the district court noted that judgment as a matter of law must also be entered on the related Title VII and HRL claims because there was "no other basis to support a verdict" aside from the jury's verdict. As we explained above, the district court improperly considered the defendants' j.n.o.v. motion on the plaintiffs' EPA retaliation claims because it was procedurally barred. However, because the plaintiffs failed to establish a cause of action under the EPA for retaliation, and thus their claims should never have been submitted to the jury, the jury's verdict is equally infirm, and thus cannot have binding effect. See Marshall v. Nelson Elec., 766 F.Supp. 1018, 1027 (N.D.Okla.1991) ("[I]f the ... claim should not have been submitted to the jury in the first place, the jury's findings are viewed as an academic exercise, a nullity, and nothing more than advisory. Under such circumstances, the jury's factual findings would not be binding on the Court for purposes of the Title VII claim."), aff'd without opinion, 999 F.2d 547 (10th Cir.1993); Swentek v. USAIR, Inc., 830 F.2d 552, 559 (4th Cir.1987) ("The Seventh Amendment does not require the trial judge to conform his findings to a jury verdict that is infirm.")
 
 
 45
 Examining the plaintiffs' retaliation claims under Title VII and the HRL, we hold that the plaintiffs failed to proffer evidence that could support a finding that a retaliatory motive played a part in the Hospital's promoting Dupre rather than one of the plaintiffs. The job qualifications for the manager position--five to six years printing experience, design and typesetting experience, and familiarity with microfilm process--had been the same since 1977, before any of the plaintiffs worked in the Department. Although plaintiffs produced evidence at trial sufficient to support a conclusion that Dupre's printing skills were lacking, there is no evidence that he failed to meet the qualifications set forth in the job description, or that the plaintiffs met them. See Canino v. EEOC, 707 F.2d 468, 471 (11th Cir.1983) (no prima facie case of retaliatory failure to promote where plaintiff did not meet qualifications of position sought); Ashker v. International Business Machs. Corp., 168 A.D.2d 724, 725, 563 N.Y.S.2d 572, 573 (3d Dep't 1990) (in unlawful discharge case brought under the HRL, employee must prove qualification for the job from which she was discharged); see also State Div. of Human Rights ex rel. Carey v. Human Rights Comm'r of Syracuse, 79 A.D.2d 181, 185, 436 N.Y.S.2d 502, 505 (4th Dep't 1981) (upholding retaliation award under HRL where plaintiff was qualified for position and employer failed to hire her because of prior filing of complaint). Nor is there evidence showing that the job description was tailored specifically to select Dupre or pass over the plaintiffs or women generally. See Coble v. Hot Springs Sch. Dist. No. 6, 682 F.2d 721, 728-29 (8th Cir.1982); Hartman v. Wick, 600 F.Supp. 361, 363-64 (D.D.C.1984). To the contrary, the job qualifications were established long before any of the plaintiffs worked in the Department, and further, we note that before Dupre, the manager's position was held by a woman--Terri Shiels--from the creation of the Department in 1976 until her death in 1984. In sum, the record is devoid of any direct or circumstantial evidence that could show that a retaliatory motive underlay Dupre's promotion to manager.
 
 
 46
 Because we find that defendants were entitled to judgment as a matter of law on the Title VII and HRL retaliation claims based on Dupre's promotion to manager, there is no need to vacate the district court's decision on these matters to preserve the plaintiffs' jury trial rights under the HRL. Even though we agree that plaintiffs were entitled to a jury trial on their HRL claims, and the usual course would be to vacate the district court's judgments on both the Title VII and HRL claims arising from Dupre's promotion to manager to prevent the collateral-estoppel effect of the district judge's factual determinations from undermining the litigant's jury-trial rights, see Lytle v. Household Mfg., Inc., 494 U.S. 545, 552-53, 110 S.Ct. 1331, 1336-37, 108 L.Ed.2d 504 (1990), here there is no need to remand the retaliation and sex-discrimination Title VII and HRL claims arising from Dupre's promotion to manager since, as a matter of law, plaintiffs fail to satisfy threshold elements of their claims.
 
 IV. Summary Judgment
 
 47
 Finally, plaintiffs challenge the grant of summary judgment in favor of the defendants on four groups of claims.
 
 
 48
 First, plaintiffs assert error in the dismissal of the Equal Pay Act claims of Lambert and Foster that they were paid less for operating the 360 press than the male operators received for operating the 385 press. However, plaintiffs' own expert's data gave the 385 position a "job worth" score nine-percent higher than the 360 press position. It also was undisputed that the 385 operators had substantially more experience operating printing presses. The district court correctly determined that there could be no violation of the Equal Pay Act as a matter of law since plaintiffs proposed no facts that would show that the positions were substantially equal.
 
 
 49
 Foster contends that the district court erred in dismissing her Title VII claim that the Hospital refused to assign her to the 360 printer on her return from maternity leave (although the Hospital did pay her the salary and benefits of a 360 operator). Title VII requires that women affected by pregnancy, childbirth, or related medical conditions be treated the same as other employees who have temporary disabilities. 42 U.S.C. Sec. 2000e(k). The Hospital's leave of absence policy states that "the Hospital is unable to guarantee return to one's original position following a Leave of Absence (except for short-term Military Leaves as defined by Law)...." Plaintiffs have offered no evidence that the Hospital departed from this policy in a discriminatory manner, or that the policy itself was designed to discriminate against pregnant women, either of which could have raised an inference of discrimination against Foster based on her pregnancy. We find no error in the district court's grant of summary judgment for the defendants on this claim.
 
 
 50
 The district court also properly granted summary judgment for the defendants on plaintiffs' Title VII and HRL claims of discrimination in the transfer of employees to the 360 and 385 presses, since the plaintiffs failed to produce any evidence to support an inference of discriminatory motive in the assignment of employees to the various printer positions.
 
 
 51
 Finally, the district court properly granted summary judgment on Foster's claim that she was denied the printing charge-person position because of her sex, since she never applied for the position. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).
 
 
 52
 Plaintiffs make a host of objections to various evidentiary rulings by the district court, all of which we find to be without merit.
 
 CONCLUSION
 
 53
 We reverse the district court's grant of j.n.o.v. on Baker's Equal Pay Act claim (and thereby her related Title VII and HRL claims) that she was denied equal pay for the microfilm charge-person duties and remand it to the district court for a new trial. Further, we hold that plaintiffs failed to establish a cause of action under the EPA for retaliation because they failed to file any formal complaints. We affirm the district court's determination that the plaintiffs were not entitled to a jury trial on their Title VII claims, but reverse the court's determination that they were not entitled to a jury trial on their HRL claims. We therefore vacate and remand those HRL claims for which defendants were not entitled to judgment as a matter of law: Foster's claim that she was paid less than Dupre when she worked in the office during her pregnancy; the claims of Baker and Foster for constructive discharge; and the claims of all three plaintiffs for miscellaneous acts of retaliatory harassment. We also vacate the district court's judgments on the Title VII claims arising from the same facts, to prevent the district court's judgments from the bench from having preclusive effect on the HRL claims, and remand them to the district court. Also, while the district court properly found Baker's and Lambert's Title VII claims of discrimination in Dupre's promotion to charge person to be time-barred, since a three-year statute of limitations applies to HRL claims, see Murphy v. American Home Prods. Corp., 58 N.Y.2d 293, 307, 461 N.Y.S.2d 232, 239, 448 N.E.2d 86, 93 (1983), their charge-person claims under the HRL appear, on the present record, to be timely; thus the district court's judgment for the defendants on this issue is vacated and remanded to the district court for further proceedings.
 
 
 54
 The district court entered judgment for the defendants on the remainder of the plaintiffs' claims on summary judgment or j.n.o.v., or after deciding the claims from the bench. All of these claims either were properly decided as a matter of law by the district court, or could have been so decided had the district court not decided them from the bench. We therefore affirm the district court's entry of judgment for the following claims: the Title VII and HRL claims of discrimination in transfers among the various printer and clerk positions of all three defendants; the EPA, Title VII, and HRL claims of Lambert and Foster that they were paid less for operating the 360 press than men were for the 385; Foster's claim under Title VII and the HRL that she was discriminated against in her assignment upon return from maternity leave; Foster's claim of discrimination in violation of Title VII and the HRL in Dupre's promotion to charge person; and the claims under Title VII and the HRL that Dupre's promotion to manager constituted retaliation and sex discrimination.
 
 
 55
 The EPA claims for which the jury found for the defendants are not challenged on this appeal. The district court's evidentiary rulings are affirmed. The parties shall bear their own costs.