**Wan Sun PENNY, Plaintiff,**

v.

**WINTHROP–UNIVERSITY HOSPITAL,**
**Defendant.**

No. CV 93–0780 (ADS).

United States District Court,
E.D. New York.

April 20, 1995.

David Porter, Garden City, NY, for plaintiff..

Putney, Twombly, Hall & Hirson, New York City, for defendant (Michael T. McGrath, of counsel).

## MEMORANDUM OF DECISION

SPATT, District Judge:

Before the Court are several pre-trial motions. The plaintiff moves to amend the complaint in order to add a cause of action for retaliation. The defendant moves to exclude or dismiss the cause of action for retaliation, and to exclude certain evidence from being admitted under Fed.R.Evid. 408. The Court heard oral argument on the various motions on April 10, 1995, immediately prior to jury selection. At that time the Court tentatively ruled on several of the issues raised by the parties' motions, and indicated that the parties could make further submissions on the matters argued prior to the commencement of the trial.

Further submissions were made to the Court regarding some of the evidentiary issues ruled upon, and on April 18, 1995, prior to opening statements, the Court heard additional argument on these matters. This Memorandum of Decision supplements and memorializes the Court's oral rulings of April 10 and April 18, 1995.

## BACKGROUND

### A. The Complaint.

The plaintiff Wan Sun Penny ("plaintiff" or "Penny") commenced this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e–2000e–17 ("Title VII"), the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621–634 ("ADEA"), and New York State Executive Law §§ 290–301 ("Human Rights Law"). Penny alleges that the defendant Winthrop–University Hospital ("defendant" or "Hospital") discriminated against her on the basis of her race, national origin and age during the course of her work as a nurse in the outpatient dialysis unit at the hospital. She also alleges that the Hospital discriminated against her when it terminated her employment at the Hospital on October 1,

1991, and that such discrimination continued during the course of the her grievance proceedings before Hospital officials.

At the time the events alleged in the complaint occurred, Penny, who was born in Korea, was 53 years old and employed as a registered nurse at Winthrop Hospital. She had worked at the Hospital since February 24, 1974. Until October 1990, Penny worked as a floor nurse in Winthrop I. In June, 1990, she requested a transfer to the outpatient dialysis unit of the Hospital. She was recommended and approved for transfer by her superiors, and was transferred to the dialysis unit on October 3, 1990.

Penny alleges that from the time she arrived at the dialysis unit, and repeatedly thereafter, she was discriminated against by being treated in a dissimilar and adverse manner with respect to the conditions of her employment, as compared to similarly situated non-Asian and younger nurses. According to Penny, the alleged discrimination involved, among other things: being placed on probation despite having worked at the Hospital for sixteen years, and not being told that she was on probation; being reduced in grade from a level II nurse to a level I nurse after her transfer to the dialysis unit; being denied the services of the nurse educator for the dialysis unit, and not being adequately oriented or informed about the procedures at the dialysis unit; being excluded from meetings; and being assigned menial tasks such as cleaning up and secretarial duties.

In August, 1991, Penny was accused by her superiors of allegedly making an error in diagnosing a patient's potassium level. Penny contends that she was wrongfully accused of the error. A similar charge had been made against her previously, in March 1991. At that time the Hospital suspended her for two days without pay, and warned her that any further incidents of unacceptable performance would result in her termination. As a result of the August, 1991 incident, the Hospital notified Penny on September 3, 1991 that (i) she was being removed from the dialysis unit, (ii) she was being suspended without pay, and (iii) if the Hospital's Human Resources Department did not find her an

alternate placement by September 30, 1991, her employment would be deemed to have been terminated.

Penny alleges she made several unsuccessful attempts to obtain alternate placement at the Hospital. The Hospital did not find an alternate placement for her, and Penny's employment with the Hospital was terminated as of October 1, 1991. Penny further alleges that prior to her termination, the Hospital had selected two young, white individuals to replace her in the dialysis unit.

As a result of the incidents alleged in the complaint, on February 6, 1992 Penny filed a timely notice of discriminatory employment practices with the New York State Department of Human Rights. After being issued a right to sue letter, she commenced the present discrimination action under Title VII, ADEA and the New York Human Rights Law. The complaint seeks liquidated, compensatory and punitive damages, and demands a jury trial.

B. *The Plaintiff's Grievance Proceedings.*

The Hospital affords employees an opportunity to file a grievance for any problems relating to their work. The grievance procedure has four steps. First, the employee is to discuss the employment problem with either her Supervisor or Department Head. If the employee still remains dissatisfied, he or she may then file a formal, written grievance with the Hospital's Human Resources Department ("Human Resources"). In the second step, a conference hearing is scheduled between the employee, the immediate supervisor, the Department Head and a representative of Human Resources. The grievance is reviewed, and arguments are presented and heard. Other individuals with original information may be called to testify. A written decision by Human Resources is to be transmitted to the employee within 15 days after the hearing. If the employee is dissatisfied with the decision, he or she may proceed to the third step.

In the third step, a conference hearing is scheduled between the employee, the Department Head, a Human Resources Representative, and the Senior Vice President of Administration, or his/her designee, as the Hearing Officer. The Hearing Officer may allow others to participate and may receive new evidence. The grievance and written decision from the previous step are discussed. A written decision is to be transmitted to the employee within 15 days of the hearing. If the employee is dissatisfied with the decision, he or she may proceed to the final step. In the fourth step, a final conference is scheduled between the employee, a representative of Human Resources, and the Hospital's Executive Vice–President, or his/her designee. No new evidence or witnesses are considered. The grievance is discussed, and a written decision is to be transmitted to the employee within 15 days from the conference. The decision from the fourth step is final.

After receiving notice that she would be terminated if an alternative position were not found for her by September 30, 1991, Penny commenced a grievance proceeding. She filed a written grievance. A hearing was held on October 17, 1991, and a decision was issued on October 28, 1991 upholding Penny's termination. Penny proceeded to the third step. A hearing was held on November 11, 1991, which also resulted in a decision dated November 21, 1991 upholding her termination. Penny then proceeded to the fourth step, and a conference was held on December 11, 1991.

Rather than issuing a decision within 15 days of the conference, the Hospital's President, Martin Delaney ("Delaney"), sent a letter to Penny dated February 3, 1992. The letter, described in more detail later in this decision, stated that Delaney agreed with the determination to discharge Penny. However, because of Penny's long service with the Hospital, Delaney was prepared to convert the discharge to a suspension without pay and reassign Penny to the nursing unit where she worked prior to being transferred to the dialysis unit, if, among other things, Penny executed a waiver and release of all claims asserted in the grievance proceedings. After some negotiating between Penny and Delaney, Penny refused to accept the offer. On March 20, 1992 Delaney notified Penny that he was upholding her discharge.

Penny did not make any allegations with regard to the grievance proceedings in her original complaint.

## C. *The Defendant's Motion to Dismiss.*

On December 9, 1994, the Court heard oral argument on a motion by the defendant to dismiss the plaintiff's claims for compensatory and punitive damages under Title VII and ADEA. Prior to the argument, the plaintiff acknowledged that punitive damages are not available under the New York State Human Rights Law or ADEA, and withdrew her demand for punitive damages with respect to these two claims. She also withdrew any demand for compensatory damages under ADEA. However, Penny maintained that she was entitled to compensatory and punitive damages under Title VII, because the Hospital allegedly continued to discriminate against her after her termination, during the course of the grievance proceedings.

Because the complaint did not contain any allegations of continuing discriminatory acts, or for that matter allegations of any discriminatory acts occurring after October 1, 1991, the Court granted the defendant's motion to dismiss the demands for compensatory and punitive damages under Title VII. However, the plaintiff was granted leave to amend her complaint in order to include the allegations of continuing discrimination occurring during the grievance proceedings, including several acts occurring after November 25, 1991, the effective date of the Civil Rights Act of 1991 ("1991 Act"), Pub.L. 102–166, 105 Stat. 1071. If proven, the acts of continuing discrimination occurring after November 25, 1991 could provide the plaintiff with a basis for a jury trial of the Title VII claims, as well as the remedies of compensatory and punitive damages with respect to these claims.

The alleged continuing acts occurring after her termination were specified by the plaintiff as follows:

1. During the grievance proceeding, the Hospital would not let Penny review the patient chart that it claimed Penny had made an error on. According to Penny, another nurse whited-out a relevant part of the chart to erase an error that nurse had made on the chart. Penny claims that this other nurse was, in fact, responsible for the error Penny was wrongly accused of and terminated for.

2. The Hospital continued to search for alternate positions for Penny in December, 1991, and to the extent the search was restrictive, it constitutes an act of discrimination.

3. The Grievance Decision Penny received on February 3, 1992 was discriminatory. According to Penny, the decision stated that the Hospital would convert Penny's discharge to a suspension without pay and reassign Penny to her former nursing unit, if Penny executed a waiver and release of all claims asserted in the grievance proceeding. Penny alleges that conditioning her reinstatement on signing the waiver and release is discriminatory.

4. After Penny refused to sign the waiver and release, the Hospital upheld the discharge in a letter to Penny dated March 20, 1992. Penny contends the upholding of her discharge was an act of discrimination.

5. The Hospital sent a letter to the New York State Department of Education, Office of Discipline, stating that Penny was terminated from employment on March 20, 1992. Penny contends sending the letter was an act of discrimination.

## D. *The Plaintiff's Amended Complaint and the Present Motions Before the Court.*

Penny served and filed her amended complaint on December 16, 1994. In addition to including the above allegations of continuing discrimination in her amended complaint, Penny also added a claim for retaliation under each of the statutory causes of action in the complaint. The basis for the retaliation claim was Delaney's February 3, 1992 offer of reinstatement upon the condition that she sign a release and waiver.

The defendant objected to the amended complaint, because it allegedly exceeded the scope of the Court's order granting the plaintiff leave to amend her complaint. According to the defendant, the plaintiff was not granted leave to plead a claim for retaliation. In order to resolve the controversy, the plaintiff

moved the Court to approve the amended complaint *nunc pro tunc,* and to strike the defendant's sixth affirmative defense objecting to the plaintiff's amending the complaint beyond anything approved by the Court's order granting the plaintiff leave to amend. The defendant opposed the plaintiff's motion, and also cross-moved to dismiss the amended complaint to the extent it alleged claims of continuing discriminatory acts under Title VII and the 1991 Act.

In addition, the defendant moved under Fed.R.Evid. 408 to exclude three documents as evidence. The first and second are, respectively, the February 3, 1992 letter from Delaney to Penny offering the plaintiff reinstatement on condition that the plaintiff sign a release and waiver of claims, and the March 20, 1992 letter from Delaney to Penny upholding her discharge. The defendant contends that under Fed.R.Evid. 408 these letters are inadmissible because they are related to settlement negotiations. The third document is a letter to the New York State Department of Education from the Hospital reporting that Penny was terminated due to her failure to carry out her duties as a nurse. This letter was sent pursuant to the Hospital's duty to file such a report under section 2803–e of the New York State Public Health Law. The defendant maintains the document is privileged and cannot be disclosed, because the statute provides that such reports are confidential, and subject to disclosure only by judicial subpoena.

On April 10, 1995 the Court heard oral argument on the various motions raised by the parties. At that time, the Court tentatively ruled that the plaintiff did not have a cause of action for retaliation, and accordingly granted the defendant's motion to dismiss the amended complaint to the extent it alleged such a cause of action. The Court also agreed with the plaintiff that the letters from Delaney dated February 3, 1992 and March 20, 1992 were not admissible pursuant to Fed.R.Evid. 408. The plaintiff stipulated to the inadmissibility of the Hospital's letter to the New York State Department of Education.

After considering further submissions on the matters tentatively decided by the Court,

and hearing further argument on April 18, 1995, the Court desires to formalize its rulings as to the matters it ruled upon, as well as some additional matters raised by the parties in their submissions subsequent to April 10, 1995.

## DISCUSSION

*Rule 12(b)(6) Standard.*

A complaint is to be dismissed under Fed. R.Civ.P. 12(b)(6) for failure to state a claim, if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *accord Gagliardi v. Village of Pawling,* 18 F.3d 188, 191 (2d Cir.1994); *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991). In addition, such a motion is addressed solely to the face of a pleading, and "[t]he court's function ... is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985).

In assessing the sufficiency of a pleading on a motion to dismiss, "all factual allegations in the complaint must be taken as true," *LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991), and all reasonable inferences must be construed in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1099 (2d Cir.1988), *cert. denied sub nom., Soifer v. Bankers Trust Co.,* 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989).

The Court is also mindful that under the modern rules of pleading, the plaintiff need only aver "a short and plain statement showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), and that "[a]ll pleadings shall be so construed as to do substantial justice." Fed.R.Civ.P. 8(f).

## 1. The Plaintiff's Retaliation Claim.

In order to state a *prima facie* claim for retaliation, the plaintiff must demonstrate that: (1) she or he was engaged in an activity protected under Title VII; (2) the employer was aware of the plaintiff's partic-

ipation in the protected activity; (3) the employer took adverse action against the plaintiff based upon his or her activity; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer. *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir.1993). An "adverse action" is one which adversely impacts on the employee, such as a discharge, demotion, or failure to promote. *Connell v. Bank of Boston*, 924 F.2d 1169, 1179 (1st Cir.), *cert. denied*, 501 U.S. 1218, 111 S.Ct. 2828, 115 L.Ed.2d 997 (1991). *See also Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir.1991) (Union's refusal to proceed with plaintiff's grievance procedure because plaintiff filed a discrimination claim with the Department of Human Rights is an adverse employment action).

■ Specifically, the plaintiff alleges in this case that the February 3, 1992 letter from Delaney to her, which conditioned the plaintiff's reinstatement on her signing a waiver and release, was an act of retaliation:

·Upon information and belief, defendant's requirement contained in its February 3, 1992 grievance decision that plaintiff sign a waiver and release as a precondition to returning to work was ... retaliatory for plaintiff's claims of discrimination.

Amended Complaint, ¶ 64. *See also* Paragraphs 13, 15–16 of the Affidavit of David Porter, Esq. dated January 17, 1995, accompanying the plaintiff's motion to amend the complaint. The Court disagrees.

In the Court's view the plaintiff cannot assert a cause of action for retaliation on the facts alleged, as a matter of law. The February 3, 1992 letter does not constitute an adverse employment action, because it neither adversely impacts on her employment, nor deprives her of the ability to "expeditiously ascertain and enforce her rights." *Palma*, 931 F.2d at 207. The plaintiff was terminated from employment on October 1, 1991, and the grievance proceeding provided her with a remedy to challenge the decision terminating her employment. *See Delaware State College v. Ricks*, 449 U.S. 250, 261, 101 S.Ct. 498, 505–06, 66 L.Ed.2d 431 (1980). In the Court's view, if anything, the February 3, 1992 letter constitutes the opposite of an

adverse action, because it conditionally offers the plaintiff reinstatement of her already terminated position.

Accordingly, Penny's motion to amend the complaint in order to add a cause of action for retaliation based on the February 3, 1995 letter is denied, as is her motion to strike the defendant's sixth affirmative defense to the extent that defense objects to the retaliation claim. The defendant's motion to dismiss the amended complaint to the extent it alleges a retaliation claim is granted.

**2. Continuing Acts of Discrimination.**

■ The defendant contends that the plaintiff cannot raise a claim under the 1991 Act, because her cause of action for discriminatory discharge accrued on the date she was terminated, October 1, 1991, which is prior to the November 25, 1991 effective date of the statute. Moreover, the defendant contends that the plaintiff has not alleged any facts sufficient to support a claim of continuing discrimination by the Hospital after her termination.

A claim for continuing discrimination "may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir.1994). Discrete incidents of discrimination, however, that "are not related to discriminatory policies or mechanisms" may not amount to a continuing violation. *Id.* *See also Lambert v. Genesee Hospital*, 10 F.3d 46, 53 (2d Cir.1993) ("[M]ultiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation."), *cert. denied*, — U.S. —, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994).

In the Court's view, the defendant misconstrues the nature of the plaintiff's discrimination claims by focusing on the accrual of the discharge claim. The present action is not solely based on a claim of discriminatory discharge. It is also based on a variety of other alleged discriminatory acts by the Hos-

pital that, according to the plaintiff, occurred during the course of her work in the outpatient dialysis unit and during the grievance proceeding she initiated after being terminated. If the allegations added by the plaintiff in the amended complaint are true, a factual issue is presented regarding whether the alleged acts occurring after Penny's termination are related instances of discrimination permitted by the Hospital to continue unremedied, such that they amount to a discriminatory policy, practice or mechanism against Penny.

The cases relied upon by the defendant to support its contention that the grievance proceeding does not operate to extend the duration of the alleged discrimination, are inapposite. The cases cited by the defendant concern a claim for discriminatory discharge and a contention that the grievance proceeding somehow constituted a continuing discrimination that extended the accrual of the discharge claim for purposes of the statute of limitations. *See e.g., Ricks,* 449 U.S. at 261, 101 S.Ct. at 505–06 (rejecting the argument that a grievance proceeding tolls the statute of limitations for discriminatory discharge action until the completion of the grievance proceeding); *Int'l Union of Elec., Radio, and Machine Workers v. Robbins & Myers, Inc.,* 429 U.S. 229, 236, 97 S.Ct. 441, 447, 50 L.Ed.2d 427 (1976) (same); *Charlier v. S.C. Johnson & Son, Inc.,* 556 F.2d 761, 765–66 (5th Cir.1977) (discharge of plaintiff and refusal to reinstate do not, standing alone, constitute a continuing course of discrimination); *Mays v. New York City Police Dept.,* 701 F.Supp. 80, 83 n. 5 (S.D.N.Y.1988) (where plaintiff has not presented any facts to demonstrate a basis for finding a continuing violation, there is no tolling of the statute of limitations for a discriminatory termination claim), *aff'd without opinion,* 888 F.2d 1376 (2d Cir.1989). None of these cases, however, deals with a claim such as the one raised by the plaintiff, namely that there was discrimination during the course of the grievance proceeding itself, which, following the discriminatory discharge and other pre-discharge conduct of the Hospital, constitutes a continuing pattern of discrimination against the plaintiff.

Accordingly, the defendant's cross motion to dismiss the amended complaint to the extent it alleges relief under the 1991 Civil Rights Act and claims of continuing discrimination, is denied.

### 3. Exclusion of the February 3, 1992 and March 20, 1992 Letters Under Fed.R.Evid. 408.

The defendant also moves to exclude the February 3, 1992 and March 20, 1992 letters written by Delaney and sent to the plaintiff. According to the defendant, these letters constitute part of settlement negotiations and are properly excluded under Fed.R.Evid. 408. The Court agrees.

■ In a discrimination case where the employee has already been terminated and has threatened legal action, offers of settlement of the dispute on condition of waiver and release of the claim are inadmissible as evidence of discrimination under Fed.R.Evid. 408. *See Pierce v. F.R. Tripler & Co.,* 955 F.2d 820, 827 (2d Cir.1992) ("[W]here a party is represented by counsel, threatens litigation and has initiated the first administrative steps in that litigation, any offer made between attorneys will be presumed to be an offer within the scope of Rule 408."); *Holmes v. Marriott Corp.,* 831 F.Supp. 691, 710–11 (S.D.Iowa 1993) (unconditional offer of reinstatement after termination not barred by Rule 408). The only time such evidence is admissible is when, contemporaneously with the notice of termination, the employee is asked to sign a waiver and release of all claims in order to receive severance pay. *See Cassino v. Reichhold Chemicals, Inc.,* 817 F.2d 1338, 1342–43 (9th Cir.1987), *cert. denied,* 484 U.S. 1047, 108 S.Ct. 785, 98 L.Ed.2d 870 (1988).

■ It is clear from the documentary evidence presented to the Court that the letters at issue form part of the negotiations between Penny, who was represented by counsel at the time, and the Hospital to settle her discrimination claims. The February 3, 1992 letter from Delaney is a conditional offer to settle the matter, based on Penny's signing a waiver and release of the discrimination claims raised in her grievance. The letter states in relevant part:

If it were not for your many years of service to the Hospital, I would sustain the discharge without further consideration. However, in light of that service, and your agreement to rededicate yourself to good nursing practices, I am prepared to convert the discharge to a suspension without pay and reassign you to your former nursing unit on Winthrop 1 on the following conditions:

1. You serve a six month probationary period during which your nursing practice will be carefully monitored. There will be an evaluation after the first three months to determine if your performance is at an acceptable level to continue.

2. You execute a Waiver and Release of all claims asserted in the grievance proceeding as a pre-condition to returning to work.

If the foregoing are acceptable to you, please contact Ms. Nancy Lovallo in Human Resources to execute the necessary papers and arrange for your return to work.

At the time this letter was written Penny was represented by counsel with respect to her grievance. Three days after the letter was written, on February 6, 1992, Penny filed her discrimination claim with the New York Department of Human Rights ("DHR"). In a letter from Penny's counsel, Ms. Linda Jill Anderson, to the New York area Equal Employment Opportunity Commission ("EEOC") dated the same date as the DHR complaint and documenting her expenses, Ms. Anderson represented to the EEOC that she had been representing Penny since September 4, 1991 for the purposes of, among things, "attempts to negotiate a settlement."

On February 7, 1991 Penny met with Delaney, and rejected his offer. Instead she proposed being reinstated without probation, with back pay, her legal fees paid and her record cleared. On February 24, 1992 Delaney wrote to Penny again, stating that she had not responded to his offer. Delaney stated that unless he heard from her within the next ten days, he would conclude she was not interested in his offer and would accordingly uphold her discharge. Penny respond-

ed on March 5, 1992 with a letter to Delaney, reiterating her position in the matter. Her letter states in relevant part:

> Your offer of reinstatement on a "probationary" basis is unacceptable.... At our meeting, I told you that I wish to be reinstated without probation, with back pay as promised, my legal fees, and my record closed.
>
> . . . .
>
> I regret that we could not settle this without outside intervention. I ask that you once again consider my counter proposal thus eliminating the need for litigation. As you know, I am represented by counsel and I ask that you refer any further correspondence on this matter to my attorneys[.]

The contents of this letter were sent by Delaney to Nancy Lovallo ("Lovallo"), the Assistant Director of Human Resources at the Hospital. In a memorandum dated March 9, 1992 Delaney explained to Lovallo that he considered Penny's response a rejection of the offer, and that he would be sending a letter to Penny upholding her termination unless Lovallo and Penny were able to work out a mutually satisfactory arrangement. On March 12, 1992, Penny delivered a hand-written letter to Lovallo, reiterating "the conditions" she requested for reinstatement, or in the alternative her conditions for settlement if she were not reinstated.

None of Penny's counter-offers were accepted, and on March 20, 1992 Delaney wrote to Penny, notifying her that he was upholding her termination. The letter contains a reiteration and chronology of the negotiations and positions of the parties.

Accordingly, under the provisions of Fed. R.Evid. 408 and the authority of *Pierce v. F.R. Tripler & Co., supra,* the Court is excluding the February 3, 1992 and March 20, 1992 letters from Delaney to the plaintiff as evidence of furnishing or offering or promising to furnish valuable consideration in compromising a disputed claim, and as evidence of statements made in compromise negotiations.

#### 4. Exclusion of the December 27, 1991 Memorandum.

■ After oral argument on April 10, 1995, the defendant submitted a letter requesting that the Court also exclude from evidence under Fed.R.Evid. 408 a memorandum dated December 27, 1991 from Delaney to Lovallo. The memorandum, among other things, lists positions available at the time that, in Lovallo's view, Penny could successfully perform. The memorandum was produced to the plaintiff, but in redacted form to prevent the disclosure of certain paragraphs containing attorney-client communications regarding the settlement offer to Penny.

According to the parties, this memorandum forms the basis for one of the plaintiff's alleged acts of continuing discrimination after November 25, 1991, namely that in December 1991 the Hospital continued to search for alternate positions for Penny in a restrictive manner. The defendant contends that the memorandum cannot be admitted into evidence, even as redacted, because the jobs listed in the memorandum were the result of a job search performed for settlement purposes with Penny. As such, the defendant claims the memorandum constitutes a settlement related document that is inadmissible under Fed.R.Evid. 408.

The defendant produced an unredacted copy of the memorandum to the Court on April 18, 1995, for *in camera* inspection. Upon reviewing the document in its entirety, it is the Court's view that (1) the document would reveal attorney-client communications if produced to the plaintiff unredacted, and (2) clearly involves settlement negotiations and the advise of counsel regarding this case. Moreover, the jobs listed in the memorandum are the result of a search conducted for settlement purposes.

The plaintiff contends that the memorandum should be admitted, and further contends that the job search listed in the document was not made for settlement purposes, but rather, was made as part of the grievance process. In support of her contentions, Penny points to the deposition testimony of Lovallo regarding this memorandum. The Court is unpersuaded by the plaintiff's contentions. When read in its entirety, the

memorandum makes clear that the job search was conducted for settlement purposes. Moreover, the Court finds nothing in the deposition testimony of Lovallo to support the plaintiff's interpretation of the memorandum. Indeed, Lovallo's deposition testimony indicates that the search was conducted at the request of Delaney after the December 11, 1994 hearing, for the purposes of settlement:

Q Did you have any conversations with Martin Delaney in which he was contemplating a different type of discipline other than termination?

A [He] told me he was thinking of offering her job back in med-surg or termination, that would be considered a suspension, and then going back to work in med-surg or termination, but he didn't share his thoughts on it. . . . He was telling me those were the two things he was considering.

Q Do you recall when the conversation was?

A Yes, before I prepared the list of positions for him and summarized the evaluation. *That's why he said he wanted it.*

Lovallo Deposition at 82–83 (emphasis supplied).

Accordingly, the December 27, 1991 memorandum from Lovallo to Delaney, which, among other things, lists certain jobs that the Hospital considered Penny could perform given her record, is excluded under Fed. R.Evid. 408.

For the reasons stated above, it is hereby

**ORDERED,** that the plaintiff's motion to amend the complaint under Fed.R.Civ.P. 15(a) in order to add a cause of action for retaliation is denied, and the defendant's motion to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) to the extent it states such a cause of action is granted; it is further

**ORDERED,** that the plaintiff's cause of action for retaliation is dismissed as a matter of law, with prejudice; it is further

**ORDERED,** that the defendant's motion pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the plaintiff's Title VII claims for compensa-

tory and punitive damages under the 1991 Civil Rights Act is denied; it is further

**ORDERED,** that the defendant's motion pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the plaintiff's claims of continuing discrimination is denied; and it is further

**ORDERED,** that the defendant's motion pursuant to Fed.R.Evid. 408 to exclude from being admitted into evidence (i) the February 3, 1992 and March 20, 1992 letters from Martin Delaney to the plaintiff, and (ii) the December 27, 1991 memorandum from Nancy Lovallo to Martin Delaney, is granted.

**SO ORDERED.**