**Jennifer A. WITTENBERG, Plaintiff,**

v.

**WHEELS, INC., Defendant.**

**No. 96 C 1707.**

United States District Court,
N.D. Illinois,
Eastern Division.

April 22, 1997.

David Allan Beck, Ronald A. Orner, Norton Wasserman, Orner & Wasserman, Ltd., Chicago, IL, for Plaintiff.

James Stanton Whitehead, Karen L. Hale, Sidley & Austin, Chicago, IL, for Defendant.

### MEMORANDUM OPINION AND ORDER

COAR, District Judge.

Defendant Wheels, Inc. ("defendant" or "Wheels") has moved to dismiss plaintiff Jennifer A. Wittenberg's ("plaintiff" or "Wittenberg") complaint, which alleges that Wheels unlawfully retaliated against her by discharging her for engaging in activity protected by Section 15(a)(3) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3). In the alternative, Wheels has moved for summary judgment on Wittenberg's claim. In a separate motion, defendant has moved to strike plaintiff's references to the decision of the Board of Review of the Illinois Department of Employment Security regarding her claim for unemployment compensation. For the following reasons, defendant's motion to

strike will be granted. Defendant's motion to dismiss, or in the alternative, for summary judgment, will be denied.

## I. Factual Background

Defendant is an Illinois corporation and is licensed to do business in Illinois. Defendant hired plaintiff, Jennifer Wittenberg, in November 1987 as a Maintenance Assistance Program Advisor ("MAP Advisor"), which was designated as a full-time salaried position. (12(M) Stmt., ¶¶ 3–5). From the time she was hired until 1990, Wittenberg worked Monday through Friday from 8:30 a.m. to 5:00 p.m. From 1990 to August 1993, Wittenberg worked Monday through Friday and one Saturday per month. (Id. ¶¶ 6–7).

On August 4, 1993, Eric Nygard, Wittenberg's supervisor, announced at a meeting of MAP Advisors that all MAP Advisors were expected to work extra hours. Nygard announced that those extra hours would consist of an extra hour on Mondays and an extra one-half hour on Tuesday through Fridays. (12(M) Stmt., ¶¶ 8, 10–11). At the August 4 meeting, Wittenberg announced that she "didn't like working extra hours" and told Nygard that she would have to get her babysitter to stay longer. Wittenberg also informed everyone at the meeting that there was no need for the extra hours. (Id. ¶¶ 12–14). The issue of whether Wheels would pay additional compensation for the extra work hours was never discussed by anyone during the August 4, 1993 meeting. All of the MAP Advisors began working the extra hours on the Monday following the August 4, 1993 meeting. (Id. ¶¶ 15–16).

Approximately two weeks after the August 4, 1993 meeting, Wittenberg told Nygard that she was "not going to work the extra hours because we weren't getting paid for them." Nygard responded to Wittenberg's statement by stating that the MAP Department employees were salaried. (12(M) Stmt., ¶¶ 17–19). Wittenberg did not explain why she felt that she should receive additional compensation or identify the FLSA as a basis for her belief that she was entitled to additional compensation for the extra hours. It is disputed as to whether Wittenberg stated that she believed Wheels' failure to pay her was illegal.[1] (Id. ¶ 20).

Approximately one week after her last conversation with Nygard, Wittenberg approached him and asked to see John Frank, Assistant Vice President for MAP Operations. Nygard asked Wittenberg if there was anything that he could help her with, and she stated, "No. I already told you, you know, I'm not getting paid for these extra hours." Because Frank left for vacation on that day, Wittenberg never spoke with him about working additional hours without additional compensation. (12(M) Stmt., ¶¶ 21–25).

On Monday, August 23, 1993, Wittenberg was scheduled to work from 9:00 a.m. to 6:00 p.m., which included one hour of extra work from 5:00 p.m. to 6:00 p.m. Prior to that date, Wittenberg had worked all overtime for which she had been scheduled. (12(M) Stmt., ¶¶ 26–27). At 5:00 p.m., Wittenberg turned off her computer and prepared to leave work. Nygard then asked her what she was doing, to which Wittenberg responded, "I'm leaving." When Nygard asked her for her reasons for leaving, Wittenberg stated, "Because I'm not getting paid. So I'm only working my regular hours." When Nygard asked to speak with Wittenberg about her refusal to work the extra hour, she stated that she would "talk to him tomorrow because this was [her] time." Wittenberg then left work prior to the completion of her scheduled work hours. (Id. ¶¶ 28–33).

The next day, August 24, 1993, Wittenberg reported to work as scheduled at 9:00 a.m. (12(M) Stmt., ¶ 34). In a meeting with Wittenberg that morning, Nygard asked her when she would make up the extra hour of

---

**1.** Wheels claims that Wittenberg's deposition testimony establishes that "Wittenberg never told Mr. Nygard or any other Wheels supervisory employee that Wheels' failure to pay her additional compensation for the additional hours she worked was illegal." (12(M) Stmt., ¶ 48). However, this court's reading of the deposition testimony cited by Wheels suggests the following interpretation: Wittenberg was unsure at her deposition whether she told Nygard that Wheels' conduct was illegal but was sure that she did not tell anyone else at Wheels that the conduct was illegal.

work that she had missed the day before.[2] Wittenberg stated, "I don't know. I'm not getting paid for it," and then, "No, I'm not going to work the extra hour." (*Id.* ¶¶ 36–37). Nygard then told Wittenberg that she would have until noon that day to tell him when she would make up the extra hour of work. (*Id.* ¶ 38). During the August 24, 1993 meeting, Wittenberg never mentioned the FLSA or said that Wheels was legally required to pay her additional compensation for the extra hours of work. Wittenberg also did not tell Nygard that she would file a complaint against Wheels regarding its failure to pay her additional compensation for the extra hours worked. (*Id.* ¶¶ 39–40).

Wittenberg did not meet with Nygard or any other Wheels supervisor before noon on August 24, 1993. (12(M) Stmt., ¶ 41). After her lunch break on August 24, 1993, Nygard and Jeff Lucas, another Wheels supervisor, met with Wittenberg. During that meeting, Nygard told Wittenberg that she was discharged for insubordination. (*Id.* ¶¶ 42–43). Approximately two weeks after Wittenberg's discharge, she contacted the Illinois Department of Labor for the first time regarding Wheels' failure to pay her additional compensation for the additional hours. That day, Wittenberg decided to file a claim against Wheels for its refusal to pay her additional compensation for the August 1993 mandatory overtime. (*Id.* ¶¶ 45–46).

On June 7, 1995, Wittenberg filed a Complaint at Law in the Circuit Court of Cook County, Illinois. On January 25, 1996, the Circuit Court granted Wheels' motion to dismiss the complaint as insufficient in law. On February 27, 1996, the Circuit Court granted Wittenberg's motion to modify the dismissal order to allow her to file an amended complaint. Wittenberg filed a First Amended Complaint at Law on that day. That complaint alleged that Wheels had violated the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. Wheels then removed the action to

this court pursuant to 28 U.S.C. § 1441(a). (*See* Notice of Removal (Mar. 25, 1996)).

## II. Motion to Dismiss

■ Defendant first moves the court to dismiss Wittenberg's complaint pursuant to Rule 12(b)(6) because it fails to state a claim upon which relief may be granted. Defendant argues that the FLSA only prohibits retaliation against individuals who engage in conduct specifically enumerated in § 15(a)(3) of the FLSA, which provides that it is unlawful for any person

> to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

29 U.S.C. § 215(a)(3). Because plaintiff's complaint does not allege that she engaged in any of the three groups of activity enumerated in § 15(a)(3),[3] defendant argues that plaintiff's complaint should be dismissed.

### A. Standards for Motions to Dismiss

A motion to dismiss pursuant to Rule 12(b)(6) does not test whether the plaintiff will prevail on the merits but instead whether the claimant has properly stated a claim. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The court may dismiss a complaint for failure to state a claim under Rule 12(b)(6) only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *see also Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In deciding a motion to dismiss. the court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the plaintiff. *Antonelli v. Sheahan,* 81 F.3d 1422, 1427 (7th Cir.1996).

---

**2.** According to Wittenberg, Nygard "repeatedly" asked her when she would make up the extra hour. (12(N) Resp., ¶ 37).

**3.** Plaintiff has only alleged that Wheels "terminated [her] employment in retaliation for [her] repeated complaints and requests that she be properly compensated for the overtime hours of work she performed and would perform." (2d Am.Compl., ¶ 8).

## B. Analysis

Defendant bases its motion to dismiss in large part on the Second Circuit's decision in *Lambert v. Genesee Hospital,* 10 F.3d 46 (2d Cir.1993). In *Lambert,* the court focused on the difference between the respective anti-retaliation provisions of the FLSA and Title VII. It found Title VII's provision to be broader than that of the FLSA because Title VII made it unlawful

> "for an employer to discriminate against any of his employees ... *because he has opposed any practice made an unlawful employment practice* by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The phrase "opposed any practice" encompasses an individual's complaints to supervisors regardless of whether she also files an EEOC charge. *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.,* 957 F.2d 59, 65 (2d Cir.1992).

*Lambert,* 10 F.3d at 55 (emphasis added). As noted *supra,* however, the anti-retaliation provision of the FLSA refers only to certain types of formal activities and does not contain a comparable "opposition" clause. The *Lambert* court found that "[t]he plain language of [§ 15(a)(3) ] limits the cause of action to retaliation for filing formal complaints, instituting a proceeding, or testifying, but does not encompass complaints made to a supervisor." *Lambert,* 10 F.3d at 55.

To defendant's credit, its supporting memorandum of law recognizes that the other circuits that have decided the issue have held that § 15(a)(3) *does* protect just the type of conduct alleged in this case. *See, e.g., EEOC v. Romeo Community Sch.,* 976 F.2d 985, 989–90 (6th Cir.1992) (finding that employee's assertion of statutory rights—telling employer that it was "breaking some sort of law" by paying lower wages—was triggering factor in § 15(a)(3) claim); *EEOC v. White & Son Enterprises,* 881 F.2d 1006, 1011 (11th Cir.1989) ("[T]he unofficial complaints expressed by the women to their employer about unequal pay constitute an assertion of rights protected under the [FLSA]."); *Love*

*v. RE/MAX of Am., Inc.,* 738 F.2d 383, 387 (10th Cir.1984) ("The [FLSA] also applies to the unofficial assertion of rights through complaints at work "). In addition, defendant notes that in one case in this district the court found that an employee's informal complaint at a staff meeting about the lack of compensation for certain work performed was protected from retaliation under § 15(a)(3). *See Cuevas v. Monroe Street City Club, Inc.,* 752 F.Supp. 1405, 1413 (N.D.Ill.1990) (Shadur, J.). This court's research has produced at least two other cases from this district in which a cause of action under § 15(a)(3) was found to lie where the employee had made complaints only within the employer's organization. *See Chisholm v. Foothill Capital Corp.,* 940 F.Supp. 1273, 1283 (N.D.Ill.1996) (Gettleman, J.); *Elbaz v. Congregation Beth Judea, Inc.,* 812 F.Supp. 802, 804, 806 (N.D.Ill.1992) (Aspen, J.).

Notwithstanding these cases, Wheels argues that *Lambert* is correctly decided. Defendant bases this conclusion on a comparison of the anti-retaliation provisions of Title VII and the FLSA and points to the fact that, when drafting the Title VII provision, Congress explicitly chose to protect activity that fell short of filing a formal complaint. On the other hand, Wheels notes that Congress has chosen not to amend the FLSA to include an "opposition" clause similar to that found in Title VII, even though it has had the opportunity to do so. Defendant takes this to mean that Congress did not intend the anti-retaliation provision of the FLSA to protect activity such as that in question in this case.

The court disagrees. First of all, while the Seventh Circuit has never *expressly* decided the issue of whether § 15(a)(3) protects conduct not specifically enumerated therein, *see Crowley v. Pace Suburban Bus Div.,* 938 F.2d 797, 798 & n. 3 (7th Cir.1991) (noting that § 15(a)(3) has been broadly construed by other courts but also noting that issue was not before it on appeal), it has nevertheless implicitly recognized that the section should be read broadly. For example, in *Avitia v. Metropolitan Club of Chicago, Inc.,* 49 F.3d 1219 (7th Cir.1995), the court recognized that a plaintiff had a § 15(a)(3) cause of action

when he was retaliated against for stating that he had not been paid for his overtime work in the course of an audit of the defendant by the Department of Labor. *Id.*, at 1223–24. That audit was apparently initiated by the Department of Labor (and not the plaintiff), and thus the plaintiff's actions in *Avitia* cannot be said to fall within the strict parameters of § 15(a)(3).[4] The *Avitia* court's affirmance of the jury verdict finding the defendant liable for retaliatory discharge under the FLSA therefore leads to the conclusion that the Seventh Circuit would find that Wittenberg has also stated a cause of action under § 15(a)(3).

Even without the court's decision in *Avitia,* the Supreme Court's statements regarding the FLSA, as well as public policy considerations, require this court to give an expansive reading of § 15(a)(3). As noted in *Cuevas,* the Supreme Court

> has made the point that "Congress sought to foster a climate in which compliance with the substantive provisions of the Act would be enhanced" by recognizing "that fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions." Consequently courts have construed the meaning of the anti-retaliatory provision more broadly, so as to include less formal complaints by employees.

*Cuevas,* 752 F.Supp. at 1412–13 (quoting *Mitchell v. Robert DeMario Jewelry, Inc.,* 361 U.S. 288, 292, 80 S.Ct. 332, 335, 4 L.Ed.2d 323 (1960)). This court concurs in the conclusion reached in *Cuevas.*

Defendant argues that the language from the *DeMario Jewelry* decision quoted in *Cuevas* (and additional language quoted by plaintiff in her memorandum) should not be read to refer to the *anti-retaliation* provision of the FLSA, but only to the scope of the *remedy* that a court may grant an employee

who has been the victim of unlawful retaliation under § 15(a)(3). Defendant concludes that "[n]othing in *DeMario Jewelry* even remotely supports Ms. Wittenberg's argument that the Supreme Court endorsed an interpretation of FLSA § 15(a)(3) that would encompass informal complaints." (Def. Reply, at 5–6). The court finds defendant's interpretation of *DeMario Jewelry* unconvincing. *DeMario Jewelry* did address only the issue of the scope of the remedy under § 15(a)(3). However, in reaching its conclusion, the court examined the "central aim" of the *entire* FLSA. That examination produced the language quoted by the court in *Cuevas* and by the plaintiff. The court declines to adopt defendant's limited reading of that language.

This court's independent reading of the FLSA also suggests that it should be read broadly. The basic purpose of the FLSA was stated in Section 2 in the finding and declaration of policy that provided:

> It is declared to be the policy of this chapter, through the exercise by Congress of its power to regulate commerce among the several States and with foreign nations, to correct and as rapidly as practicable to eliminate the conditions above referred to in such industries without substantially curtailing employment or earning power.

29 U.S.C. § 202(b). In addition, the overtime provision of the FLSA provides:

> [N]o employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). Given that the FLSA was meant "to correct and as rapidly as practicable [ ] eliminate" the existence of unpaid overtime, the court finds that the anti-

---

**4.** The court does not understand the "audit" referred to in *Avitia* to be a "proceeding" or "industry committee" that would fall within the scope of § 15(a)(3). Likewise, the court does not believe that Avitia's statement in the audit that he had not been paid overtime constitutes a "complaint" under the terms of § 15(a)(3). Thus, Avitia's statements appear to fall outside the parameters of § 15(a)(3). While the court acknowledges that protecting those statements requires a "less broad" interpretation of the FLSA than would protecting those of Wittenberg, the court can find no reason to make a distinction between the statements in *Avitia* and those in this case. The court therefore concludes that the Seventh Circuit has implicitly recognized that § 15(a)(3) should be given a broad interpretation.

retaliation provisions of § 15(a)(3) should be read to encompass informal complaints that implicate rights under the FLSA.

For the above reasons, the court finds that Wittenberg has stated a claim under § 15(a)(3) of the FLSA.

### III. Motion to Strike

█ In opposition to defendant's motion for summary judgment, plaintiff argues that, "at the very least, a genuine issue of fact exists as to whether plaintiff was fired for her alleged insubordination or in retaliation for … seeking vindication of the statutory rights to which she was entitled." (Plaint. Resp., at 10). To support this argument, Wittenberg relies in part on a decision by the Board of Review of the Illinois Department of Employment Security ("IDES") in regard to her claim for benefits. In that decision, the Board of Review concluded that Wittenberg had not been discharged for "misconduct" as that term is defined by § 602 of the Illinois Unemployment Insurance Act, 820 ILCS 405/602. Defendant has moved to strike plaintiff's references to the Board of Review's decision. Because the question of the admissibility of the Board of Review decision may be dispositive of the motion for summary judgment, the court will consider the motion to strike at this juncture.

The decision of the Board of Review is hearsay. It cannot be considered by the court in deciding whether a genuine issue of material fact exists unless it fits under one of the hearsay exceptions set out in Federal Rule of Evidence 803. The only exception found in Rule 803 that is arguably applicable to the Board of Review decision is that which allows courts to receive into evidence "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." Fed.R.Evid. 803(8)(C). In this case, several considerations suggest that the Board of Review's decision is not admissible under the hearsay exception of Rule 803(8)(C).

First of all, as defendant points out, claims for benefits under the Illinois Unemployment Insurance Act are considered only in informal administrative proceedings. See 820 ILCS 405/702; 820 ILCS 405/800. Regulations promulgated pursuant to the Act indicate that hearings before IDES referees are not conducted in conformity with the technical rules of evidence. 56 Ill. Admin. Code § 2720.250. This suggests a lack of trustworthiness of the conclusions reached as a result of these proceedings.

Second, § 1900(B) of the Illinois Unemployment Insurance Act expressly provides that decisions of benefits hearings are not admissible in any other action:

> No finding, determination, decision, ruling or order (including any finding of fact, statement or conclusion made therein) issued pursuant to this Act shall be admissible or used in evidence in any action other than the one arising out of this Act, nor shall it be binding or conclusive except as provided in this Act, nor shall it constitute res judicata, regardless of whether the actions were between the same or related parties or involved the same facts.

820 ILCS 405/1900(B).

Relying on § 1900(B), another federal court in Illinois has found that the findings of Illinois unemployment compensation proceedings are not admissible in federal civil actions. In *Rekhi v. Wildwood Indus., Inc.*, 816 F.Supp. 1312 (C.D.Ill.1993) (Mihm, C.J.), *aff'd*, 61 F.3d 1313 (7th Cir.1995), the court considered a defendant's motion to strike a report of the findings of the Department of Employment Services. As with the Board of Review decision in this case, that report dealt with the issue of whether the plaintiff had been terminated for misconduct and was therefore ineligible for unemployment benefits. The court concluded that the report was not admissible and granted the defendant's motion to strike.[5] *Id.* at 1315.

---

5. The decision in *Bush v. Commonwealth Edison Co.*, 812 F.Supp. 808 (N.D.Ill.1992) (Aspen, J.), buttresses the *Rekhi* court's conclusion that IDES findings should not be admissible in federal civil actions. In *Bush*, the court found that, after the August 1991 enactment of § 1900(B), employer-

defendants in retaliatory discharge actions could not use for their *res judicata* effect IDES findings that an employee had been discharged for misconduct. *Id.* at 811–12. The fact that IDES findings have no *res judicata* effect therefore suggests that § 1900(B)'s prohibition on the use of

Based on Federal Rule of Evidence 803(8)(C), § 1900(B) of the Illinois Unemployment Insurance Act, and the *Rekhi* and *Bush* decisions, the court concludes that the decision of the Board of Review is not admissible in this case. Wittenberg may not rely on that decision to create a genuine issue of material fact as to the motivations for her discharge. Therefore, defendant's motion to strike plaintiff's reference to the decision of the Board of Review of the IDES will be granted. The court now turns to the motion for summary judgment.

## IV. Motion for Summary Judgment [6]

### A. Summary Judgment Standards

■ Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any. show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Cox v. Acme Health Serv., Inc.,* 55 F.3d 1304, 1308 (7th Cir.1995). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Hedberg v. Indiana Bell Tel. Co.,* 47 F.3d 928, 931 (7th Cir.1995). The movant has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the movant satisfies this burden, the non-movant must set forth specific facts that demonstrate the existence of a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will

bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552–53; *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir.1994). A scintilla of evidence in support of the non-moving party's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

Finally, these summary judgment standards are applied "with added rigor in employment discrimination cases, where intent and credibility are crucial issues." *Collier v. Budd Co.,* 66 F.3d 886, 892 (7th Cir.1995) (citing *Courtney v. Biosound, Inc.,* 42 F.3d 414, 418 (7th Cir.1994)). Accordingly, "affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Id.*

### B. Analysis

■ A plaintiff seeking to withstand a defendant's motion for summary judgment on a claim of retaliatory discharge under § 15(a)(3) may proceed by the now-familiar burden-shifting approach set out in *McDonnell Douglas v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). The first step of the *McDonnell Douglas* analysis is the establishment of the *prima facie* case: (1) the plaintiff has engaged in statutorily protected expression; (2) she suffered an adverse action by her employer; and (3) there is a causal link between the protected expression and the adverse action. *See Larsen v. Club Corp. of Am.,* 855 F.Supp. 247, 253 (N.D.Ill.1994) (citing *Rennie v. Dalton,* 3 F.3d 1100,1109 (7th Cir. 1993)).

In this case, Wittenberg has clearly satisfied the second element of her *prima facie* case: she was terminated. However, Wheels argues that Wittenberg's complaints about having to work additional hours without additional compensation are not protected under § 15(a)(3), and that she has therefore not

those findings as evidence should also be given effect.

**6.** Wheels first argues that no factual basis exists for plaintiff's allegation in her First Amended Complaint that she was retaliated against for

threatening to file a complaint against Wheels. However, Wittenberg has now filed a Second Amended Complaint in which this allegation has been omitted. Thus, Wheels' first argument for summary judgment does not succeed.

established the first element of her *prima facie case*. Specifically, Wheels argues that Wittenberg only voiced "vague complaints" to her supervisor that Wheels' "failure to pay overtime was improper." (2d Am.Compl., ¶ 6). However, Wheels' argument in this regard is merely a reiteration of the argument that it made in its motion to dismiss, and will therefore be rejected on that basis. Just as courts have found that an employee need not have filed a complaint, testified, or served on an industry committee to *state a claim* under § 15(a)(3), courts have found that complaints such as the ones in this case fall under § 15(a)(3)'s protection. *See Love*, 738 F.2d at 384, 387 (holding that writing memo with attached copy of Equal Pay Act to company president requesting a raise was protected activity); *White & Son Enterprises*, 881 F.2d at 1007–08, 1011 (concluding that unofficial complaints by women regarding fact that they did not receive a raise as did men at factory "constituted an assertion of rights protected under the [FLSA]"); *Cuevas*, 752 F.Supp. at 1409, 1413 (finding that employee's complaints about not getting paid for certain things he was doing constituted protected activity). The court thus concludes that Wittenberg has established the first two elements of her *prima facie* case.

■ In regard to the third element, the court concludes that a reasonable inference may be made that Wittenberg was terminated because she engaged in statutorily protected activity. "In employment discrimination cases it is [ ] 'the perception of the decision maker which is relevant' in determining the motivation for an adverse employment action." *Larsen*, 855 F.Supp. at 253 (citation omitted). In the instant case, the person who apparently made the decision to terminate Wittenberg—Eric Nygard—was also the individual to whom she voiced her complaints about having to work overtime without being paid for that work. Thus, Nygard was clearly aware of Wittenberg's statutorily protected expression. Wittenberg engaged in this expression consistently throughout the weeks immediately prior to her termination. Such a " 'telling' temporal sequence demonstrates [the necessary] causal link" between the protected activity and the adverse employment action. *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1315 (7th Cir.1989) (finding causal link where gap between protected activity and adverse action was one week). The court concludes that Wittenberg has established the third and final element of her *prima facie* case.

■ Because Wittenberg has established a *prima facie* case of retaliatory discharge under § 15(a)(3), the burden shifts to Wheels to come forward with a legitimate, non-discriminatory reason for Wittenberg's termination. *See Cuevas*, 752 F.Supp. at 1410 (citing *Jennings v. Tinley Park Community Consol. Sch. Dist. No. 146*, 796 F.2d 962, 966 (7th Cir.1986)); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). Wheels has come forward with such a reason for Wittenberg's discharge—her refusal to work scheduled hours. It is undisputed that Wittenberg was scheduled to work until 6:00 p.m. on August 23, 1993 and that she refused to do so. Wittenberg also refused to "make up" the missed hour the next day. It is also undisputed that it was Wheels' policy that refusal to work "required" hours was grounds for immediate discharge. (12(N)(3)(b) Stmt., ¶ 60). John Frank, Assistant Vice President for MAP Operation, also "testified that it would be insubordination if a salaried employee refused an instruction to work overtime without pay." (12(N)(3)(b) Stmt., ¶ 61). It was Wheels' policy that insubordination would lead to immediate discharge. (12(N)(3)(b) Stmt., ¶ 60). The initial conclusion to be drawn from these facts is that Wittenberg was terminated for (1) refusing to work her scheduled hours and (2) being insubordinate.[7]

■ Because Wheels has articulated a non-discriminatory reason for Wittenberg's discharge, the presumption of retaliatory discharge dissolves and the burden shifts back

---

7. On their face, these appear to be two non-discriminatory reasons for Wittenberg's discharge. However, the court finds that these reasons are inextricably "intertwined" for purposes of determining whether those reasons are pretextual. *See Russell v. Acme–Evans Co.*, 51 F.3d 64, 70 (7th Cir.1995).

to Wittenberg to prove by a preponderance of the evidence that the proffered reason is a pretext.[8] *Cuevas,* 752 F.Supp. at 1410 (citing *Jennings,* 796 F.2d at 966); *see also Fuka v. Thomson Consumer Elec.,* 82 F.3d 1397 (7th Cir.1996). "Pretext" is more than a mistake; it means "a lie, specifically a phony reason for some action." *Wolf v. Buss (America) Inc.,* 77 F.3d 914, 919 (7th Cir. 1996); *Mills v. First Fed. Sav. & Loan,* 83 F.3d 833, 845 (7th Cir.1996). To establish pretext, a plaintiff must "specifically refute the facts which allegedly support the employer's proffered reasons." *Mills,* 83 F.3d at 845 (quotation omitted). A plaintiff may do so directly by presenting evidence that the employer was more likely than not motivated by a discriminatory reason, or indirectly by presenting evidence that challenges the credibility of the employer's explanation.[9] *Id,; Collier v. Budd Co.,* 66 F.3d 886, 892 (7th Cir.1995); *Robinson v. PPG Indus.,* 23 F.3d 1159, 1163 (7th Cir.1994). To attack the credibility of the proffered explanation, a plaintiff must demonstrate (1) the proffered reasons are factually baseless; (2) the proffered reasons were not the actual motivation for the adverse employment action; or (3) the proffered reasons were insufficient to motivate that adverse employment action. *Wolf,* 77 F.3d at 919; *Collier,* 66 F.3d at 892.

A plaintiff does not attack the credibility of her employer's proffered explanation by showing that her employer acted incorrectly or undesirably in instituting the employment action; rather, the plaintiff must show that her employer did not honestly believe the reasons it gave for taking that action. *Wolf,* 77 F.3d at 919. As a result, challenging the wisdom or prudence of an employer's decision is insufficient to establish pretext because the court

> does not sit as a super-personnel department that reexamines an entity's business decisions. The question is not whether the [employer] exercised prudent business

judgment, but whether [the employee] has come forward to refute the articulated, legitimate reasons for his discharge.

*Dale v. Chicago Tribune Co.,* 797 F.2d 458, 464 (7th Cir.1986), *cert. denied,* 479 U.S. 1066, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987). In determining whether the plaintiff has established pretext, the court may consider the sum or totality of the evidence presented. *See Futrell v. J.I. Case,* 38 F.3d 342, 346 (7th Cir.1994).

Finally, a plaintiff must demonstrate that each reason proffered by an employer was a pretext. *See Russell v. Acme–Evans Co.,* 51 F.3d 64, 69 (7th Cir.1995) ("The defendant has offered several independent reasons, backed by affidavits, for each of the challenged [employment] actions. The fact that some of these reasons were successfully called into question ... does not defeat summary judgment if at least one reason for each of the actions stands unquestioned."); *accord Wolf,* 77 F.3d at 920. That rule, however, is subject to the following caveat: "there may be cases in which the multiple grounds offered by the defendant for the adverse action ... are so intertwined, or the pretextual character of one of them so fishy and suspicious, that the plaintiff could withstand summary judgment." *Russell,* 51 F.3d at 70. As noted in *supra* note 7, this is one such case.

Even though Wheels has articulated non-discriminatory reasons for Wittenberg's discharge, the court finds that the totality of the evidence creates a reasonable inference that Wheels' proffered explanation was not the actual motivation for the Wittenberg's discharge. It is undisputed that Wittenberg complained more than once about having to work additional hours without being compensated for that work. It also appears that Wheels did not initially intend to pay Wittenberg for those hours. Though it is unclear from the record what the motivation for Wittenberg's complaints was, the court cannot

---

**8.** Of course, the plaintiff non-movant's burden in the summary judgment context "is only that of creating reasonable inferences, not one of *proof* as such." *Larsen,* 855 F.Supp. at 252 n. 15 (Shadur, J.) (emphasis added).

**9.** A plaintiff must support his allegations of pretext with "materials of evidentiary quality." *Collier v. Budd Co.,* 66 F.3d 886, 892 n. 8 (7th Cir.1995) (quoting *Russell v. Acme–Evans Co.,* 51 F.3d 64, 67 (7th Cir.1995)). *Cf. supra* discussion regarding admissibility of Board of Review decision.

say, as a matter of law, that Wittenberg was not attempting to obtain the compensation to which she was entitled under the law. In addition, it is undisputed that, if a MAP employee had a question regarding compensation for overtime, Wheels' policy was that the question be directed first to the supervisor, and the supervisor would then talk to John Frank, "if needed." (12(N)(3)(b) Stmt., ¶ 58). Wheels did not follow this course of action. Because of Wittenberg's ongoing dispute with Nygard regarding the lack of pay for overtime hours and Nygard's discharge of Wittenberg at the first opportunity, a reasonable trier of fact could conclude that Nygard decided to terminate Wittenberg, not for her refusal to work and/or insubordination, but rather for her protected activity. The court concludes that plaintiff has created a reasonable inference that defendant's non-discriminatory reason for her discharge is pretextual. Therefore, defendant's motion for summary judgment is denied.[10]

WHEREFORE, for the foregoing reasons, defendant's motion to strike is granted. Defendant motion to dismiss, or in the alternative, for summary judgment, is denied. The parties are directed to submit their Final Pretrial Order by May 9, 1997. The Final Pretrial Conference will be held on May 16, 1997 at 10:30 a.m. Trial is set for June 23, 1997 at 10:00 a.m.

---

**10.** The court decided the summary judgment issue solely on the basis of the *McDonnell Douglas* burden-shifting test. However, as the court noted in *Larsen v. Club Corp. of Am., Inc.*, 855 F.Supp. 247 (N.D.Ill.1994), "a plaintiff alleging retaliatory discharge under Section 215(a)(3) may proceed either by way of the 'mixed-motives' analysis announced in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) or via the" *McDonnell*

*Douglas* approach. *Larsen*, 855 F.Supp. at 252. The mixed-motives analysis "applies where both discriminatory and nondiscriminatory considerations influenced an employer in making an adverse employment decision." *Id.* The record before the court suggests that application of the mixed-motives analysis in this case would lead to the same conclusion as did the application of *McDonnell Douglas* approach.