**In re John E. PEARSON, Debtor.**

**Bankruptcy No. 92–11070–JEY.**

United States Bankruptcy Court,
D. New Hampshire.

June 26, 1997.

William S. Gannon, Wadleigh Law Office, Manchester, NH, for Wadleigh Law Firm.

Daniel Laufer, Nashua, NH, for John Pearson.

Victor Dahar, Manchester, NH, Chapter 7 Trustee.

Bruce Harwood, Sheehan, Phinney, Bass & Green, Manchester, NH, for First NH Mortgage Corp.

J. Michael Deasy, Deasy & Dwyer, P.A., Nashua, NH, for Wadleigh Law Firm.

### ORDER ON AMENDED MOTION FOR RELIEF FROM ORDER

JAMES E. YACOS, Chief Judge.

This chapter 7 bankruptcy case came before this Court on June 23, 1997 for a hearing on an Amended Motion for Relief from Order on Approval of Compromise. The Order in question approved a compromise of claims the trustee could have asserted against the First New Hampshire Bank. All parties present having been heard, the Court hereby dictates its findings and conclusions into the record and hereby rules as follows:

The Amended Motion for Relief from Order (Court Doc. 214) is hereby denied. The Compromise approved by the Order of March 19, 1996 will not be vacated inasmuch as the Court concludes on the basis of the entire record presented to it for decision that there was no fraud upon the Court that would justify that extraordinary remedy. Those documents in the record that are particularly pertinent to the Court's determination are indicated in the listing attached as an Annex to this Order, although the Court has in fact reviewed the entire record presented as being relevant to its determination.

As I indicated during colloquy with counsel during the hearing, and as I've indicated throughout my career in this Court, the finality of sale orders and the finality of compromise orders is essential to the functioning of a bankruptcy court. I know particularly in bankruptcy that if you're going to get reasonable compromises and you're going to get reasonable prices for your assets you must adhere to the procedural mechanisms that allow anybody to complain before the hammer comes down, so to speak, or before the order is entered with regard to compromises, and if you do not speak, then forever hold your peace unless there is some extraordinary basis to get behind that finality policy. One such basis for getting beyond the finality policy is the "fraud on the Court" exception to both Rule 60 and to the finality policy that underlies Rule 60 as well as bankruptcy law generally. Fraud on the Court is explained in the general case law and in *In re Tri–Cran, Inc.*, 98 B.R. 609 (Bankr.D.Mass.1989), as involving some intentional deceiving of the Court and some intentional deflecting of the Court from knowing all the facts necessary to make an appropriate judicial decision on the matter before it.

In the present case, in my judgment, the facts are exactly the opposite. The Wadleigh Law Firm that is involved here explicitly put into the record the conflict questions. While perhaps not setting out all the detail that might have been appropriate, they explicitly took steps to assure that there would be an open hearing on that matter after the Court entered an ex parte Order on their retention application in October of 1995 prior the March 1996 compromise approval. They immediately sought and got the ex parte order vacated so there *would* be a hearing. That conduct hardly equates with a deep, dark, devious intent to defraud the Court and upset judicial machinery when the attorneys themselves spread the facts on the record. And even if the pleading itself was not complete in all details it would have certainly become complete when and if the Court had the hearing that ultimately was scheduled on the motion.

The Bank ironically, and they call it ironic and I think they are correct, also made sure that the facts of possible conflict were spread upon the record of this Court and now the Bank stands under this motion charged with participating in an attempt to defraud the Court. That is a low blow, in my judgment. To accuse this Bank of intentionally trying to

defraud the Court when it itself spread on the record the conflict and raised the point about lack of ability to represent the estate in my judgment is completely unwarranted.

The Bank as a party to the settlement has a right to insist upon the finality policy of the bankruptcy laws and Rule 60 for that matter. As I've said for the reasons indicated above, the Court does not lightly upset sale or compromise orders.

The application for Wadleigh's retention with regard to the trustee's claim against First New Hampshire Bank was taken off this Court's calendar for hearing, after the conflict questions had been raised, and attorney Gannon of the Wadleigh Law Firm elected not to proceed any further to seek retention as special counsel on that matter, did have the facts of conflict spread upon the records of this Court, but in a procedural context in which it was not required that the Court look at them or give any judicial attention to them until and if the issue was raised before the Court.

There was nothing that the Court could see that prevented Mr. Pearson, if he truly believed the compromise was not in the interest of this estate, to have objected prior to the March 28, 1996 hearing, either in person or by directing his counsel to do so, and if the counsel wouldn't do it, to simply walk into this Courtroom and say "I object." Neither this Court nor any Court would not hear a client and/or debtor in that context, particularly with regard to a lawsuit asset which normally does involve the debtor knowing more about it than a trustee does initially in any case. So the Court would give great weight to what the debtor says about the lawsuit. Mr. Pearson however did not appear at the compromise hearing nor did he appear at the hearing on the present motion.

The trustee did appear at the hearing on the compromise and the matter was presented to the Court as a reasonable settlement based on the lawsuit involved which had been pending without action since 1990 when it was filed pro se by Mr. Pearson. Neither Gannon or Pearson appeared at the hearing.

The Wadleigh Law Firm had refused on the basis of conflict to represent him in any matter involving the Bradford Woods project because of their involvement with other parties to that transaction. The suit therefore had been pending at the time of the bankruptcy filing in 1992, and thereafter, without any action having been taken to pursue it.[1] It was only in October of 1995 that the matter was first broached by Mr. Gannon's application to be retained as special counsel to the trustee to pursue that litigation, in which he stated in that application that while he felt he had a conflict barring his appearing in actions against the Bank in that matter previously, that since the related Tamposi claims and counterclaims had been resolved he no longer felt that he had a conflict.

It may be that his judgment was faulty and that he did still have a conflict under professional ethics requirements but that isn't controlling here and the fact of the matter is that when the issue was broached he backed away and when the issue was presented to the Court the only people the Court heard from was the trustee and Mr. Harwood for the Bank.

The record now shows that behind the scenes Mr. Pearson was pressing Mr. Gannon to get into the First New Hampshire litigation. To get something done. To get his bankruptcy case closed and to get in his famous words "a little more" than the $35,000 that the trustee already had from Mr. Harwood's client. So, Mr. Gannon, who was being beaten around the head and shoulders by Mr. Pearson for not doing anything with regard to the First New Hampshire Bank transaction, and then seeks to get into that and move it along, under his judgment that the Tamposi settlement removed any conflict problems, and then backs away when the Bank raises those conflict problems, and the Bank just negotiates a deal with the trustee in which it isn't necessary to retain anybody for the trustee who himself is a lawyer, then Mr. Gannon is hit with this motion a year later accusing him of intending to defraud the Court and Mr. Pearson by taking the

1. The trustee prior to October 1995 was unable to obtain any other counsel to take the case on a contingent fee basis.

actions he did. Whatever else may be said about the supreme irony of this situation it clearly does not equate to intentional deceit or misrepresentation.

I cannot find from this record that there was any intent to defraud or deceive or mislead the Court in any of these circumstances. The first time that Mr. Gannon had any duty under the law to disclose any adverse interest under § 327 of the Bankruptcy Code and Rule 2014, since he was only a chapter 7 debtor's attorney, was not when he filed the case but when the trustee, in 1994, after not being able to get anybody else to pursue a number of Mr. Pearson's pending lawsuits, asked to have Mr. Gannon step in as special counsel at which time he then had to disclose the conflict, and in fact he did disclose it in the 1994 retention, and said he would represent the estate against the FDIC in other matters but would not represent the estate with regard to First New Hampshire Bank and the Bradford Woods matter.

There is some additional irony in this whole scenario. It is apparent from this record that Mr. Pearson for some number of years in this case was having Mr. Gannon represent him for free so to speak under Mr. Gannon's statement that "money isn't everything" and that they would deal with fees later and Mr. Pearson's apparent belief that that meant never. That sad story is just that. A sad story of the deterioration between a client and an attorney but hardly rises to any intent to deceive on the part of Mr. Gannon with regard to the First New Hampshire Bank suit.

Even if I were to assume that there was some further duty of disclosure, notwithstanding the withdrawal of the request to be employed on the First New Hampshire Bank matter, I can not find from this record that Mr. Gannon and the Wadleigh Law Firm had any inkling, notice or any reason whatsoever to believe that Mr. Pearson on March 28, 1996 had some sort of claim against them that was being released by virtue of the boilerplate general release language included in the trustee's settlement with the Bank, and that they were allowing that to happen without appraising the Court of the ramifications. I say that because Mr. Pearson from 1990 on knew that Mr. Tucker of the Wadleigh Law Firm was on the board of directors of the financing arm of the Bank, which made a refinancing deal with the Tamposi group, after foreclosure, and that the Tamposi group ended up with the property again. I do not find it a bit credible that Mr. Pearson couldn't put two and two together and see that he might be able to travel on that to some extent against the Bank, but on the other hand he needed Wadleigh to represent him and as it turned out for free mostly. And he made his own judgment as to how important that conflict was or wasn't. I don't think in my judgment of Mr. Pearson, as reflected from these voluminous memos and documents, that he was so soft hearted or such a naive person that he didn't see that there might be something there but was willing to forget about it for other reasons which were sufficient for his own purposes.

It was not unusual in the 1980's in the frenzy of the real estate boom that then existed that law firms were representing many different parties to many different real estate transactions. And as is reflected in the exhibits here, with regard to the Sam Tamposi deposition in one of those lawsuits, the parties would get together and sit down and talk about it and figure out that well, they could all object but they wanted to get the thing resolved, and that they'd have to go far away perhaps to get any effective, experienced lawyers that had no arguable conflicts, so that they would waive the conflicts, to get the thing tried. As that particular case indicates, Mr. Pearson was vitally interested in getting the deposition of Sam Tamposi taken to go on with that lawsuit.

The reality of that situation I think is reflected in Mr. Tucker's involvement in the Bradford Woods project. On the face of it with all I have in any specifics he was involved in some fairly routine matters that an attorney of his nature dealing with real estate and title problems, and involved in refinancing for a foreclosing entity that ended up with the property, would be a fairly routine thing that would not necessarily raise any involvement in a deep and dark conspiracy to thwart Mr. Pearson and his interests. Again it may well be an ethics violation with

regard to going ahead with such a matter. However, this Court is not required to pass upon all alleged ethics violations when it is not relevant to the matters before it. The simple fact of the matter is that what I have before me is a motion to vacate an Order of March 1996 on a motion not brought by Mr. Gannon, not brought the debtor, but brought by the Bank and the trustee which the Court acted upon in the context of absolute silence of the debtor in raising any such issues.

The other reality of the situation, that is not unknown to Courts, is that conflict disqualification issues can be raised to thwart litigation, as a tactical or strategic matter, and that therefore the Courts take with some grain of salt allegations of conflicts tardily raised after a party has suffered some initial defeats or is on the verge of its moment of truth in the litigation, i.e., a trial. The record indicates that one of the parties in the case that had the disqualification motion discussed above said in effect "I won't object to your qualification now but if this gets into heavy litigation, I'm going to move to disqualify you then." And the state court judge gave that assertion the weight it deserved which was none. We have here a disqualification in effect. An issue raised indirectly, and tardily by Mr. Pearson with regard to the Bradford Woods matter, when the record shows that he knew about Mr. Tucker in 1990.

This record does not show that Mr. Pearson was not given appropriate disclosure as to Tucker's involvement. It is not the burden of the law firm or respondents here, particularly the Bank, to refute the movant's insinuation that there was much more involvement by Tucker and lack of disclosure. The motion asserts that there must have been much more involvement by Mr. Tucker but Mr. Pearson in his affidavit says nothing about what was or wasn't disclosed to him, or what he did or didn't know about Tucker's involvement. In his affidavit seeking to have this Court find that there was an intentional fraud upon this Court, committed by officers of this Court, he gives no meaningful particulars on the key questions raised other than a conclusionary reference to the pleadings that is artfully designed in my judgment to not be tagged for saying something specific. Mr. Pearson elected not to be present at the hearing to address numerous questions raised by his motion. Again, I don't think it is the burden of the respondents to prove the case for the movant who is seeking the extraordinary remedy of vacating a Court Order on a compromise.

The rationale for finality in sales orders and compromise orders is not that the estate received the best possible deal out of the matter, or that the estate might not get more if the compromise or sale was vacated and other action was taken. If that were so, you would have no finality. You would have no encouragement for people to offer top prices and/or reasonable settlements. It has to be something more than that. So to say that the Bank got off easy, considering what might have come out of trial of the lawsuit, is easy for the movant to say but is not sufficient. I am persuaded by the trustee's statement that he evaluated the lawsuit in terms of what his options were and that he was under the scrutiny of the one creditor who was going to get anything in pursuing the lawsuit, i.e., the Internal Revenue Service. They voiced no opposition to the settlement. The debtor voiced no opposition. Taking all those facts into account, he believed then and he believes today, that it was a reasonable settlement. I agree even though, as I say, I don't have to make that factual determination in the absence of any evidence showing an intentional defrauding of the Court.

## ANNEX

In re: John E. Pearson
Bk No. 92–11070

| Date | Document | Exhibit/Pleading |
|---|---|---|
| 5/24/90 | Exhibit 8 to Court Doc. 215 | Letter to Sklar from Dan Muller |

| Date | Document | Exhibit/Pleading |
|------|----------|------------------|
| 8/21/90 | Exhibit E to Court Doc. 218 | Letter to Gannon from John Pearson |
| 8/23/90 | Exhibit F to Court Doc. 218 | Letter to Pearson from Robert Murphy |
| 10/23/90 | Exhibit 4 to Court Doc. 215 | Letter to Gannon from John Pearson |
| 11/26/90 | Exhibit 5 to Court Doc. 215 | Motion to Disqualify filed in Superior Court by Samuel Tamposi, Jr. |
| 1/11/91 | Exhibit G to Court Doc. 218 | Letter to Pearson from William Gannon |
| 9/21/94 | Court Doc. No. 143 | Application to Employ Special Counsel to Trustee filed by Victor Dahar and included statement regarding conflicts |
| 1/10/95 | Exhibit 12 to Court Doc. 215 | Stipulated Settlement in Adv. Pro. No. 94–1077 |
| 6/29/95 | Exhibit H to Court Doc. 218 | Memo to Gannon from John Pearson |
| 7/5/95 | Exhibit I to Court Doc. 218 | Letter to Gannon from John Pearson |
| 7/18/95 | Exhibit J to Court Doc. 218 | Memo to Gannon from John Pearson |
| 9/5/95 | Exhibit L to Court Doc. 218 | Memo to Cannon from John Pearson |
| 10/12/95 | Court Doc. No. 180 | Motion for Permission to Appear as Special Counsel to the Trustee filed by Victor Dahar and included statement regarding conflicts |
| 10/13/95 | Exhibit M to Court Doc.218 | Letter from Dahar to William Gannon |
| 10/23/95 | Exhibit N to Court Doc. 218 | Memo to Gannon from John Pearson |
| 10/25/95 | Court Doc. No. 181 | Motion to Vacate Order and For Hearing filed by Victor Dahar |
| 10/26/95 | Exhibit 14 to Court Doc. 215 | Memo to Gannon from John Pearson |
| 11/14/95 | Court Doc. No.183 | Response of First NH Mortgage Corp. and Hilco, Inc. To the Trustee's Motion to Vacate Order and for Hearing |
| 11/15/95 | Court Doc. No.184 | Motion for Permission to Withdraw Motion for Permission to Appear as Special Counsel to the Trustee |
| 11/16/95 | Exhibit 13 to Court Doc. 215 | Memo to Cannon from John Pearson |
| 3/11/96 | Court Doc. No.187 | Motion to Approve Compromise of Settlement and Release of Claims |
| 3/15/96 | Exhibit 0 to Court Doc. 218 | Memo to Cannon from Harold Peterson |
| 3/19/96 | Exhibit 6 to Court Doc. 215 | Memo to Cannon from Harold Peterson (confidential) |
| 3/19/96 | Exhibit P to Court Doc. 218 | Memo to Cannon from John Pearson |
| 3/20/96 | Exhibit Q to Court Doc. 218 | Memo to Cannon from John Pearson |
| 3/21/96 | Exhibit R to Court Doc. 218 | Debtor's Informational Response to Text of Motion to Approve Compromise filed by debtor |

| Date | Document | Exhibit/Pleading |
|---|---|---|
| 3/21/96 | Exhibit S to Court-Doc. 218 | Memo to Cannon from John Pearson |
| 3/21/96 | Exhibit U to Court Doc. 218 | Letter to Pearson from Cannon |
| 11/27/96 | Exhibit D to Court Doc. 218 | Memo to Cannon and Murphy from John Pearson |