Pearson v. Wadleigh, Starr          CV-97-363-JD  09/24/98
                    UNITED STATES DISTRICT COURT FOR THE
                         DISTRICT OF NEW HAMPSHIRE


In re John E. Pearson
John E. Pearson

          v.                          Civil No. 97-363-JD

Wadleigh, Starr, Peters, Dunn
& Chiesa, et al.


                            O R D E R


     John E. Pearson was the debtor in a Chapter 7 bankruptcy

proceeding that arose after the collapse of his real estate

ventures in the early 1990's.  In the course of the bankruptcy

proceedings, Pearson's claims against others involved in his

failed business ventures were resolved by settlement.  Pearson

appeals the bankruptcy court's denial of his motion for relief

from its approval of a compromise of claims against First New

Hampshire Bank.


                         **Background**[1]

     John Pearson invested in real estate development during the

1980's including a condominium project in Merrimack, New

Hampshire, developed by Bradford Woods, Inc., which was owned by

_____

     [1]The background facts are taken from the bankruptcy court's
order, In re Pearson, 210 B.R. 500 (Bankr. D.N.H. 1997) and the
record filed on appeal.

Pearson and members of the Tamposi family ("the Tamposis"). The construction loan for the project was provided by First New Hampshire Bank ("the Bank"). While the project prospered at first, it stalled in 1989 with the general downturn in the real estate market. The resulting financial difficulties set Pearson and the Tamposis at odds leading to law suits filed by both sides.

In 1990, the Bank notified Bradford Woods that it would foreclose on the real estate. The Tamposis, according to Pearson, negotiated a deal with the Bank without Pearson's knowledge whereby the Tamposis' new company, Spring Pond Development Corporation, bought Bradford Woods' condominium units at the foreclosure sale and assigned its interest to a subsidiary of the Bank's parent company, which then sold the units back to Spring Pond with financing from the Bank to complete the development. The Bank assigned Pearson's deficiency owed on the Bradford Woods development loan to the Tamposis for collection. Pearson alleges that the Tamposis arranged the deal in violation of their duties of loyalty to Bradford Woods and to him.

During this time, William Gannon of the law firm of Wadleigh, Starr, Peters & Chiesa, represented Pearson in many matters including his business dealings and his disputes with the Tamposis. Robert Murphy of the Wadleigh firm also represented

2

Pearson.  William Tucker, another partner at the Wadleigh firm, sat on the board of directors and loan committee of the financing arm of the Bank that made the refinancing deal with the Tamposis. Another attorney in the Wadleigh firm was listed as the incorporator of the Spring Pond corporation.

The Tamposis, represented by John Rachel with the Law Office of Daniel Sklar, and William Tucker raised a question of a conflict of interest in Gannon's representation of Pearson in his litigation against the Tamposis.  In a letter dated October 23, 1990, Pearson acknowledged the potential conflicts in representation:

> Apparently Bill Tucker of your firm has been representing the Tamposis on the Bradford Woods matter and has formed Spring Pond Development Corp. which is now the vehicle they are using to dispose of the Bradford Woods property to my detriment.  Further, Bob Murphy has been having an ongoing relationship representing the Tamposis' interest in connection with a zoning matter . . . in Nashua and Hollis.

In the same letter, however, Pearson urged Gannon to move ahead with his litigation against the Tamposis as quickly as possible.

In November of 1990, the Tamposis moved to disqualify the Wadleigh firm from representing Pearson in his suit against them on grounds that nine members of the Wadleigh firm, including Robert Murphy, had represented members of the Tamposi family in their business and financial affairs involving ten different

3

entities.  Robert Murphy responded on behalf of Pearson that before the case was filed, the parties and their counsel met, discussed the conflict issues, and agreed that the Wadleigh firm could represent Pearson in the litigation.  The court denied the motion to disqualify counsel.  In a letter dated January 11, 1991, Gannon wrote to Pearson that the Wadleigh firm could not represent him in suits brought against him by the Tamposis because of a conflict of interest.

In April of 1992, Pearson, represented by William Gannon, filed a Chapter 7 bankruptcy petition.  At the time of filing, Pearson was involved in sixty-one law suits.  Three suits involving the Tamposis and the Bank (separate from the suit in which the conflict issue arose) pertained to Pearson's guaranty of the loan from the Bank for the Bradford Woods project and the Tamposis' subsequent dealings with the Bank on their Spring Pond project.  One suit was removed to federal court while the other two closely related suits remained in state court.[2]

In September of 1994, the trustee for the bankruptcy estate, Victor Dahar ("the Trustee"), gave notice to all creditors that

_____

[2]The two state court suits were a pro se action by Pearson to enjoin the Bank, the Tamposis, and other entities involved in the Bradford Woods project financing from proceeding against him on any of the outstanding loans and the Bank's action against Pearson to recover on the loan to Bradford Woods guaranteed by Pearson.

4

he was filing an application to employ William Gannon as special counsel to handle Pearson's litigation. In October, the Trustee moved for authority to sell to the Bank's parent company all of the estate's claims in Pearson's three suits with the Bank along with all of Pearson's stock and other interests in the Bradford Woods project. The Trustee also sought authority to sell the estate's claims against the Tamposis and other loan guarantors. Pearson objected, and the Trustee withdrew the motion.

On November 22, 1994, William Gannon was appointed to represent the estate in all of Pearson's litigation, including the Tamposi cases, except cases involving the Bank. Gannon disclosed a conflict preventing him from representing the estate in the Bank litigation. A hearing on the appointment was held on November 17, 1994, at which no one objected to Gannon's appointment to represent the estate in litigation other than the Bank cases. The estate settled Pearson's claims with the Tamposis with approval of all parties including Pearson.

Apparently believing that his conflict was resolved once the Tamposis were removed from the litigation, Gannon filed an application to represent the estate in the remaining litigation with the Bank. On October 12, 1995, the Trustee filed an ex parte motion to allow Gannon to represent the estate to settle the Bank litigation, which the court approved. Behind the

5

scenes, Pearson was pressing Gannon to get involved in settling the Bank litigation. The Bank advised the Trustee that it objected to Gannon's appointment on grounds of a conflict of interest. Gannon then withdrew his application and the court vacated the appointment. The Trustee handled settlement negotiations on behalf of the estate for the Bank litigation.

On March 11, 1996, the Trustee filed a motion to approve a settlement and release of claims involving the Bank. The terms of the settlement included a release by the Trustee and the Bank of all individuals claiming through either of them for all claims against the estate and the Bank and a list of affiliated entities in consideration of a $40,000 payment by the Bank to the estate. The settlement also allowed the Bank to file a limited withdrawal of its proof of claim in the bankruptcy action permitting the Bank to continue to participate as a general unsecured creditor. Pearson, represented by Gannon, filed an "Informational Response" to the Trustee's motion to approve settlement in which he pointed out that the amount of the Bank's claim in the proposed settlement was wrong. Pearson's response concluded, "the Debtor supports the proposed compromise and settlement, but not for the self-serving 'reasons' articulated by First NH Bank which drafted the motion." Neither Gannon nor Pearson attended the hearing on the settlement proposal. The court approved the settlement on

March 28, 1996, with a modified approved claim for the Bank.

Almost a year later, on February 14, 1997, the Trustee filed a notice of abandonment of all of the estate's potential claims of conflict of interest or breach of duty of loyalty against the Wadleigh law firm or William Gannon. The Wadleigh firm objected asking that the Trustee complete the process of investigating the potential claims. Pearson, represented by new counsel, moved on March 27 for relief from the bankruptcy court's order approving the settlement with the Bank alleging fraud on the court because the conflicts of interest were not disclosed in court filings.

The bankruptcy court held a hearing on June 23, 1997, on the Trustee's notice of abandonment and Pearson's motion for relief from approval of the settlement with the Bank. The court ruled that to the extent the settlement and release with the Bank did not preclude litigation by Pearson such litigation was burdensome to the estate and should be abandoned. The court approved the notice of intended abandonment but expressly declined to determine the scope of the release. The court found no support in the record for Pearson's allegations of fraud based on a failure to disclose conflicts of interest and denied Pearson's motion for relief from approval of the settlement. The court noted, nevertheless, that the attorneys' conduct might constitute ethics violations. Pearson appeals the denial of his

7

motion for relief from the settlement.

## Standard of Review

On appeal, the court reviews de novo the bankruptcy court's legal conclusions. In re I Don't Trust, 143 F.3d 1, 3 (1st Cir. 1998). The bankruptcy court's factual findings and applications of properly construed law to fact, however, are entitled to deference and will be set aside only if proven to be clearly erroneous. See In re Winthrop Old Farm Nurseries, 50 F.3d 72, 73 (1st Cir. 1995); see also Cadle Co. v. McKernan, 207 B.R. 971, 974 (D. Mass. 1997) (explaining continuum of deference in mixed questions of law and fact).

## Discussion

Pearson appeals the bankruptcy court's decision on grounds that the court erred in not granting his motion for relief pursuant to Federal Rule of Civil Procedure 60(b)(3) for fraud on the court. Pearson alleges that the Wadleigh firm, the Trustee, and the Bank perpetrated a fraud on the bankruptcy court by failing to inform the court that the Wadleigh firm had represented all parties involved in Pearson's litigation with the Bank. In addition, Pearson argues that the settlement with the Bank impermissibly released his potential claims against the

8

Wadleigh firm and Gannon for representation under a conflict without prior disclosure to the bankruptcy court.

## A.  Conflicts of Interest

Rule 60(b) permits the court to relieve a party from a final order or judgment on grounds of fraud on the court.[3]  Simon v.

---

[3]Rule 60(b) provides as follows:

**Mistakes;  Inadvertence;  Excusable Neglect;  Newly Discovered Evidence;  Fraud, Etc.**  On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:  (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.  The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.  A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation.  This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28 U.S.C., § 1655, or to set aside a judgment for fraud upon the court.  Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the

9

Navon, 116 F.3d 1, 6 (1st Cir. 1997). Fraud on the court is an "'unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter' involving an officer of the court." Geo. P. Reintjes Co. v. Riley Stoker Corp., 71 F.3d 44, 48 n.5 (1st Cir. 1995) (quoting Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989)). A litigant cannot obtain postjudgment relief unless he demonstrates fraud on the court by clear and convincing evidence. Aoude, 892 F.2d at 1118.

Pearson argues that the long history of the Wadleigh firm's participation with and representation of various sides of the Pearson-Tamposi-Bank dealings created conflicts of interest that prevented independent representation of the parties involved. In support of his fraud theory, Pearson relies on the "particularly rigorous conflict-of-interest restraints upon the employment of professional persons in a bankruptcy case" imposed by 11 U.S.C.A § 327(a) and the bankruptcy court's "affirmative duty to exercise vigilance in avoiding impermissible conflicts of interest on the part of court-appointed professionals." Rome v. Braunstein, 19

nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

10

F.3d 54,57, 59 (1st Cir. 1994).  Pearson contends that the appellees' failure to disclose their conflicts of interest to the bankruptcy court in the context of the proposed settlement of the Bank litigation perpetrated a fraud upon the court by undermining the bankruptcy court's ability to impartially judge the proposed settlement.

The facts of record do not support Pearson's theory.  The bankruptcy court vacated Gannon's appointment to serve as counsel for the estate in litigation with the Bank before the negotiations began that resulted in the settlement that Pearson seeks to overturn.  The Trustee, not court-appointed counsel, represented the estate in the Bank litigation.  Thus, Gannon was not a court-appointed counsel in the settlement with the Bank, and the Rome standard for scrutiny of conflicts in court-appointed counsel is inapplicable to establish fraud on the court in this context.

In addition, as the bankruptcy court found, Pearson was aware of the Wadleigh firm's various representations and potential conflicts beginning in 1990, long before the settlement with the Bank in 1996.  Despite his knowledge, Pearson neither ended his relationship with Gannon and the Wadleigh firm, nor informed the bankruptcy court of any possible conflicts.  Gannon notified the court of conflicts in his representation of the estate with respect to litigation involving the Bank before he

11

was appointed to represent the estate in litigation with the Tamposis. Pearson did not object to Gannon's appointment nor has he moved to set aside the Tamposi settlement on grounds of fraud on the court based on Gannon's allegedly undisclosed conflicts of interest.

Instead, following settlement of the Tamposi litigation, Pearson urged Gannon to participate in the estate's efforts to settle with the Bank. It was the Bank, not Pearson, who objected to Gannon's appointment as counsel for the estate in that litigation and, as the bankruptcy court found, the Bank "made sure that the facts of possible conflict were spread upon the record" of the court. Thus, even if Pearson were able to demonstrate a fraud on the court based on nondisclosure of various possible conflicts of interest, he seems to have been a participant, not a victim, in that course of conduct.

To the extent Gannon and the Wadleigh firm may have represented Pearson or others under a conflict of interest, Pearson has not shown that such conflicts undermined the integrity of the bankruptcy court's decision to approve the settlement of the Bank litigation.[4] Thus, based on the record

_____

[4]Pearson's efforts to show that Gannon, Tucker, and the Wadleigh firm violated the New Hampshire Rules of Professional Conduct do not advance his cause here. To overturn a court order based on fraud on the court, Pearson must show fraud that undermined the judicial process, not simply malfeasance or

12

submitted for appeal, Pearson has not presented any evidence of fraud on the court based on nondisclosure of possible conflicts of interest in the settlement of the Bank litigation, and consequently has not met his burden to demonstrate fraud by clear and convincing evidence.

B. **Failure to Disclose the Sale of an Asset of the Estate**

Pearson also argues that fraud on the court occurred through the release in the settlement with the Bank. Pearson contends that the bankruptcy estate included as an asset his potential claims against Gannon, Tucker, and the Wadleigh firm based on their alleged conflicts of interest during his litigation with the Tamposis and the Bank. He posits that the settlement with the Bank improperly "sold" his claims against the Wadleigh firm and others because the Bank has asserted that any claims against the Wadleigh firm are barred by the release signed as part of the

---

unethical conduct by attorneys in events that did not influence the court's ability to adjudicate the disputed issue fairly. The possibility of ethical violations that Pearson suggests is a matter that would have been more properly referred to the New Hampshire Supreme Court Committee on Professional Conduct. But see N.H. Rules Prof. Conduct § 1.10 (providing six year limitations period for disciplinary actions subject to certain discovery and tolling provisions).

13

settlement with the Bank.[5]  Pearson alleges that Gannon and Wadleigh intentionally misled the court to believe, when it approved the settlement, that no release of claims against them was included in the settlement when the Bank, Gannon, and the Wadleigh firm intended to release those claims.  Consequently, Pearson argues, the appellees "sold" his conflict-of-interest claims without disclosure to the court in violation of 11 U.S.C.A. § 541(a)(1) and perpetrated a fraud on the court by concealing their true intent.[6]

To constitute fraud on the court in this context, the appellees must have perpetrated their "unconscionable scheme" to undermine the impartiality of court proceedings "sentiently" or with "corrupt intent."  Aoude, 892 F.2d at 1119.  In other words, the appellees must have known of Pearson's alleged claims against Gannon, Tucker, and the Wadleigh firm; intended the release in the settlement to bar such claims; and intentionally withheld material information from the court in order to gain approval of

_____

[5]The release included the Bank's attorneys.

[6]Pearson is not challenging the scope or effect of the actual release signed in order to preserve a possible cause of action against Gannon, the Wadleigh firm, or others.  To the contrary, Pearson argues that the appellees intended the release to cover his claims against them but intentionally withheld that information in order to mislead the court about the scope of the release and the "sale" of an undisclosed asset.

14

the settlement with an undisclosed "sale" of an asset.

Pearson did not list any claims against Gannon or the Wadleigh firm as assets of his estate. The proposed settlement submitted to the bankruptcy court for approval included a release signed by the Trustee and the attorney for the Bank. After the settlement with the Bank had been approved by the court, Pearson apparently served a writ on the Wadleigh firm alleging causes of action arising from their multiple representations in his dealings with the Tamposis and the Bank. An attorney at the Wadleigh firm notified the Trustee of the pending suit.

The Trustee moved to abandon as burdensome any cause of action that Pearson might have had against the Wadleigh firm. The Wadleigh firm objected to the proposed abandonment of the claims asking that the Trustee further investigate the validity and value of the potential claims.

In its order dated June 26, 1997, approving the Trustee's proposed abandonment of Pearson's potential claims against Gannon and the Wadleigh firm, the bankruptcy court explicitly declined to determine whether or not the settlement and release with the Bank barred Pearson from pursuing any potential claims against Gannon or the Wadleigh firm. The bankruptcy court further held in its order denying relief from the settlement:

I can not find from this record that Mr. Gannon and the

15

> Wadleigh Law Firm had any inkling, notice or any reason whatsoever to believe that Mr. Pearson on March 28, 1996 [the date of the settlement with the Bank] had some sort of claim against them that was being released by virtue of the boilerplate general release language included in the trustee's settlement with the Bank, and that they were allowing that to happen without appraising the Court of the ramifications.

In re Pearson, 210 B.R. at 503. Thus, the bankruptcy court found that based on the circumstances presented on the record and the language in the release, neither Gannon nor the Wadleigh firm intended the release to bar Pearson's claims against them and intentionally withheld their plan from the court.

Pearson argues that the bankruptcy court's finding is clearly erroneous. He interprets the court's statement to mean that neither Gannon nor the Wadleigh firm had an "inkling" at the time of the settlement that Pearson might have claims against them based on their conflicts of interest in representation. He contends that based on the record of Gannon's and the Wadleigh firm's participation and representations during his dealings with the Tamposis and the Bank, they certainly knew that Pearson could have a cause of action against them. Thus, Pearson reasons, the court's finding that they had "no inkling" is "impossible."

Pearson misunderstands the court's finding. The court found that Gannon and the Wadleigh firm did not intend the boilerplate language of the release in the settlement to bar Pearson's claims

16

against them.  The court did not find, as Pearson has interpreted, that Gannon and Wadleigh did not know Pearson might have claims against them.  Thus, Pearson's arguments miss their mark.

In addition, the record shows that the Trustee, who signed the release in the settlement, apparently believed that Pearson's claims against the Wadleigh firm survived the release, since he filed a motion to abandon the claims.  The Wadleigh firm and Gannon, who did not sign the release, did not suggest in their response to the Trustee's proposed abandonment that they believed the claims were barred by the release -- instead they asked that the validity of the claims be determined.  The Bank alone suggested that the release might bar some claims the Trustee sought to abandon but only those against the Bank's former counsel -- not Pearson's claims based on conflicts in his representation.  Nevertheless, the efficacy of the release with respect to any of Pearson's alleged claims has yet to be determined so that none of his alleged claims can be deemed "sold" as part of the settlement with the Bank.  Thus, the record supports the bankruptcy court's factual conclusions.

As Pearson has not shown that the bankruptcy court's findings were clearly erroneous, he cannot show that the Wadleigh firm and Gannon perpetrated a fraud on the court by selling an undisclosed claim through the settlement with the Bank.

17

## <u>Conclusion</u>

For the foregoing reasons, the decision of the bankruptcy court is **<u>affirmed</u>**.

SO ORDERED.

                                                _____
Joseph A. DiClerico, Jr.
District Judge

September 24, 1998

cc:   Daniel A. Laufer, Esquire
      Victor W. Dahar Jr., Esquire
      Geraldine B. Karonis, Esquire
      Bruce A Harwood, Esquire
      J. Michael Deasy, Esquire
      George Vannah, U.S. Bankruptcy Court